*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0077P (6th Cir.)
File Name: 01a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

GARY BRADFORD CONE,
  *Petitioner-Appellant,*

  *v.*

RICKY BELL, Warden,
Riverbend Maximum Security
Institution,
  *Respondent-Appellee.*

No. 99-5279

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-02312—Jon Phipps McCalla, District Judge.

Argued: September 12, 2000

Decided and Filed: March 22, 2001

Before: MERRITT, RYAN, and NORRIS, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Paul R. Bottei, FEDERAL PUBLIC
DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant.
Jennifer L. Smith, OFFICE OF THE ATTORNEY

1

GENERAL, CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for Appellee. **ON BRIEF:** Robert L. Hutton, GLANKLER & BROWN, Memphis, Tennessee, for Appellant. Tonya G. Miner, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for Appellee.

———————————

## OPINION

———————————

RYAN, Circuit Judge. Gary Bradford Cone was convicted in a Tennessee state court on two counts of first degree murder, two counts of murder in the perpetration of a burglary, three counts of assault with intent to commit murder, and one count of robbery by use of deadly force. He was sentenced to death. His appeal to the Tennessee Supreme Court and two post-conviction petitions for relief were unsuccessful. He then filed a petition for a writ of *habeas corpus* in the federal district court, and it was denied. This court issued a certificate of appealability.

We now affirm the denial of Cone's petition with regard to the offenses of conviction but grant his petition with respect to the death sentence because, in the sentencing phase of his trial, Cone was denied the effective assistance of counsel guaranteed him by the Sixth Amendment to the United States Constitution.

## I.

### Facts

The crime spree that culminated in Cone's conviction and sentence to death began on August 9, 1980, when he robbed a jewelry store in Memphis, Tennessee, of approximately $112,000 worth of goods. The police were alerted and they promptly spotted Cone driving a car. A high speed chase ensued, following which Cone abandoned the car in a residential neighborhood, shot pursuing police officer B. C.

petitioner's death sentence due to the ineffective assistance of counsel at sentencing, unless the state conducts a new penalty phase proceeding within 180 days after remand.

reasons Cone's counsel has given are totally unreasonable, given the stakes. This was not "strategic" representation; it was nonrepresentation of the most deadly sort.

Under *Cronic*, a presumption of prejudice is raised by counsel's behavior; thus, Cone need not show actual prejudice. Essentially, Cone did not have counsel during the sentencing phase of his trial and thus the prosecutor's insistence that justice required that Cone be put to death was not subjected to "meaningful adversarial testing." *Cronic*, 466 U.S. at 656. We find that counsel's abandonment of Cone at possibly the most "critical stage of his trial" fell below an objective standard of reasonableness and prejudiced him, which resulted in the ineffective assistance of counsel under the Sixth Amendment. *Id.* at 659.

But the state of Tennessee has held that Cone's lawyer's behavior was not ineffective under *Strickland* and we may not disturb that ruling unless we are convinced that it constitutes a "decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). We conclude that Cone's counsel's refusal to offer any evidence in mitigation and refusal even to address the jurors to ask them to spare Cone's life because counsel feared the prosecutor might make a "devastating" argument denied Cone his Sixth Amendment right to counsel at sentencing and that the Tennessee court's conclusion to the contrary is an unreasonable application of the clearly established law announced by the Supreme Court in *Strickland*.

## XI.

### Conclusion

We **AFFIRM** the district court's refusal to issue a writ of *habeas corpus* with respect to the petitioner's conviction, but we **REVERSE** the district court's judgment as to the petitioner's sentence. We **REMAND** to the district court with instructions to issue a writ of *habeas corpus* vacating the

Allen and citizen John Douglas Clark, and unsuccessfully tried to shoot a third citizen, Herschel Dalton when Dalton refused to surrender his car to Cone. Cone temporarily eluded the police, but they seized his car and in it found a large amount of cash, drugs, and the stolen jewelry.

The next day, Cone appeared in the same residential neighborhood at the home of Lucille Tuech. He drew a gun on Tuech when she refused to let him in to make a phone call. Later the same day, Cone broke into the home of an elderly couple, Shipley and Cleopatra Todd, who were 93 and 79 years old, respectively. Cone tried to convince the couple to help him, but when they refused to cooperate, he brutally killed them. Three days later, the Todds' severely beaten and mutilated bodies were found in their home. Cone's fingerprints and hair samples were also found in the home. In due course, Cone was arrested in Florida and returned to Tennessee.

## II.

### State Court Trial Proceedings

Cone's jury trial was held in Shelby County Criminal Court beginning on April 14, 1982. It concluded with a jury verdict that found him guilty of: (1) two counts each of first degree murder and murder in the perpetration of a burglary involving the Todds; (2) assault with intent to commit murder in the first degree against Officer Allen, Clark, and Dalton; and (3) robbery with a deadly weapon, of the jewelry store clerk. Cone was sentenced to 10 to 25 years in prison on the assaults, life imprisonment on the robbery, and death on the two murder charges. He appealed as of right to the Tennessee Supreme Court, which affirmed the conviction and sentence.

## A.

### State Court Collateral Proceedings - First Petition

On June 22, 1984, Cone filed his first state post-conviction petition, attacking his conviction and death sentence. He alleged that his rights had been violated under the First, Fourth, Fifth, Sixth, Eight, Ninth, and Fourteenth Amendments to the United States Constitution, and particularly, that he had been denied the effective assistance of counsel at trial. On November 21, 1984, Cone filed an amended post-conviction petition, claiming that his prosecutors had engaged in misconduct and alleging additional instances of ineffective assistance of counsel. The state trial court held a hearing and denied Cone's petition.

Cone appealed that denial to the Tennessee Court of Criminal Appeals, and on November 4, 1987, that court affirmed.

On December 21, 1987, Cone sought permission to appeal to the Tennessee Supreme Court, raising only claims of prosecutorial misconduct and ineffective assistance of counsel, but his petition was denied.

## B.

### State Court Collateral Proceedings - Second Petition

On June 15, 1989, Cone, acting *pro se*, filed a second state post-conviction petition, and on June 22, 1989, an amended petition. The trial court dismissed the amended petition as barred by the successive petition restrictions of Tennessee's post-conviction statute. Tenn. Code Ann. § 40-30-112 (1990) (since repealed). Cone appealed, and on May 15, 1991, the Court of Criminal Appeals reversed and remanded the amended petition to the trial court to allow Cone to "rebut the presumption of waiver." A presumption of waiver arises under Tennessee law if a claim for relief is not asserted before a court of competent jurisdiction in which the claim could have been presented. Tenn. Code Ann. § 40-30-112 (1990)

appellate courts and the district court below—avoiding a "devastating" argument by the prosecutor—we think a reasonable attorney would have realized the absolute necessity of arguing for his client's life by making a closing argument. In addition, counsel had plenty of mitigating evidence at his fingertips; yet he failed to present it at the sentencing phase.

We reject out of hand, the argument that a competent attorney would determine that not presenting mitigating evidence of any kind and not making a final argument in a death penalty case is a justifiable "strategy" because doing so might trigger a "devastating" response by the prosecutor—the sole reason assigned by the Tennessee courts for excusing counsel's silence. How much worse off could Cone have been if he were sentenced to death after a "devastating" argument by the prosecutor than if he were sentenced to death after the prosecutor's "mild" request that he be sentenced to death, which was followed by his own attorney's silence? Or, asked differently: How much more devastating for the petitioner could the prosecutor's "devastating" argument have been than the death sentence the petitioner got without such argument?

We can only imagine the effect on the jurors when Cone's defense counsel refused even to ask them to spare his client's life. They could only have inferred that Cone's counsel was, by his silence, acquiescing to the prosecutor's plea that Cone be sentenced to death. *See Stewart*, 140 F.3d at 1270. Cone may well have fared better if his counsel had left the courtroom entirely for the sentencing phase of the trial. If that had occurred, the jurors could not have inferred, as indeed they must have, that counsel's knowing and purposeful silence was an implicit agreement that justice required that Cone be put to death. When a man faces the gallows and his attorney sitting next to him declines even to ask the jurors to spare his life in the name of simple mercy, the attorney ought to have a most compelling reason for failing to speak—one that would incline a reasonable observer to credit as a sentencing strategy that is legally and factually justified. The

case.    Fourth, he claims that Cone told him he would "explode" if he got on the stand.  Fifth, he explained that he made his penalty phase "closing argument" in his opening statement during the guilt phase, and therefore, did not need to make a closing argument.  Sixth, he explained his use of a rather confusing and convoluted theory on how he planned to get the jury to find an illegal aggravating circumstance, which would be the basis for later having the whole penalty phase thrown out.  Last, he claimed that he wanted to prevent the prosecutor from making one of his notorious "devastating" closing arguments.

While these post hoc justifications, given in testimony at Cone's post-conviction hearing, surely amount to *explanations* for counsel's silence at sentencing and may have been "tactical" decisions, they do not necessarily defeat Cone's claim that his attorney's refusal to plead for Cone's life amounted to constitutional ineffectiveness.

A trial lawyer accused of constitutional ineffectiveness for failing to act where action is ordinarily indicated will almost always have a reason for declining to act.  The reason will usually be called the lawyer's "strategy."  But the noun "strategy" is not an accused lawyer's talisman that necessarily defeats a charge of constitutional ineffectiveness.  The strategy, which means "a plan, method, or series of maneuvers or stratagems for obtaining a specific goal or result," Random House Dictionary 1298 (Rev. ed. 1975), must be reasonable.  It need not be particularly intelligent or even one most lawyers would adopt, but it must be within the range of logical choices an ordinarily competent attorney handling a death penalty case would assess as reasonable to achieve a "specific goal."

Here, the goal, the only conceivable goal, was to persuade the jurors not to sentence Cone to death.  How counsel's refusal even to ask the jurors to do that could be called a reasonable strategy to achieve the goal, eludes us.

Even if we add up all of counsel's claimed strategic tactics, only one of which was apparently credited by the Tennessee

(since repealed).  On August 13, 1993 and October 5, 1993, Cone's post-conviction counsel filed second and third amended petitions, alleging more ineffective assistance of counsel claims.  Finally, on November 12, 1993, counsel filed a fourth amended petition.

The trial court, on remand, dismissed the amended petitions under Tenn. Code Ann. § 40-30-112(b), holding that all the grounds raised were barred because they had previously been determined or were waived.  This judgment was affirmed by the Tennessee Court of Criminal Appeals, and the Tennessee Supreme Court denied an application for permission to appeal.

Cone filed a motion for a rehearing, but it too was denied by the Tennessee Supreme Court. The United States Supreme Court denied Cone's petition for a writ of *certiorari*.

### III.

### Federal Court *Habeas* Petition

Cone then filed a motion in federal district court to stay his execution; the court  granted the stay and permitted the filing of a *habeas* petition under 28 U.S.C. § 2254.  On July 1, 1997, Cone filed a petition for a writ of *habeas corpus* in federal district court.  On October 14, 1997, Cone filed motions for an evidentiary hearing and for discovery, but they were denied.  The district court also denied the section 2254 petition, and further, denied a certificate of appealability, finding that an appeal would not be taken in good faith.  The court also lifted the stay of execution, however, a new execution date was not set.  This court then granted Cone's motion for a certificate of appealability.

We review *de novo* the district court's disposition of a petition for *habeas corpus*, but we review the district court's factual findings for clear error.  *Carter v. Bell*, 218 F.3d 581, 590 (6th Cir. 2000).

## IV.

### Federal *Habeas* and Tennessee Waiver

Before addressing the substance of Cone's several constitutional claims, it might be useful to review the basis for this federal court's authority to examine the validity of a state court conviction.

A federal court may grant relief on a petition for a writ of *habeas corpus* only if the applicant has exhausted the remedies available in the state court. 28 U.S.C. § 2254(b)(1)(A) (West Supp. 2000). If the state court adjudicates and rejects a claim on adequate and independent state grounds, such as a state procedural rule that precludes adjudicating the claim on the merits, the petitioner is barred by this procedural default from seeking federal *habeas* review of such claim, unless the petitioner can show "cause and prejudice" for the default. *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977).

However, there are several prerequisites before the cause and prejudice test is applied in a federal court to any kind of state procedural default. "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "Second, the court must decide whether the state courts actually enforced the state procedural sanction." *Id.* Third, the procedural default must be an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim. *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 148 (1979). If these three prerequisites are met, a federal court must determine whether the petitioner is able to meet the cause and prejudice test to excuse the state procedural default.

The cause and prejudice standard is a two-part test in which the petitioner must: (1) present a substantial reason to excuse the default, *Coleman*, 501 U.S. at 754; and (2) show that he

latitude is given to the decision of the attorney. *Moore*, 153 F.3d at 1104.

However, where the waiver is not based on a sentencing strategy, or is based upon a decision called "strategy" which no reasonable observer could credit as involving any logically defendable analysis, the attorney may have performed in a deficient manner. *Smith v. Stewart*, 140 F.3d 1263, 1269 (9th Cir. 1998). An attorney's decision to present no evidence whatever in mitigation and, *in addition*, to offer no argument when his client faces the prospect of being sentenced to death may amount to a virtual abandonment of the adversarial process that results in injustice, thus demonstrating both deficient performance and prejudice. *Kubat v. Thieret*, 867 F.2d 351, 368-70 (7th Cir. 1989).

This court has found that counsel's failure "to investigate and present any mitigating evidence during the sentencing phase so undermined the adversarial process that [defendant's] death sentence was not reliable." *Austin*, 126 F.3d at 848. Where mitigating evidence was available, but not adequately investigated and not presented at sentencing, this "does not reflect a strategic decision, but rather an abdication of advocacy." *Id.* at 849.

It is indisputable that Cone's trial attorney presented no mitigating evidence at all and made no final argument; he did not even ask the jury to spare his client's life. However, Cone's attorney testified at the post-conviction hearing that he had several strategic reasons why he decided to waive final argument, admittedly a "radical tactic" at the penalty phase of a capital case. First, he thought that he had presented to the jury during the guilt phase almost every mitigating circumstance available. He claimed that since the jury is charged to consider those factors in its penalty phase deliberations, he did not have to put the evidence on a second time. Second, he claims that he "sucker[ed]" the prosecution into putting on mitigating evidence of Cone's Bronze Star decoration from Vietnam without having Cone testify. Third, he claims he thought the trial judge had "lost control" of the

In an appropriate case, *Strickland*'s prejudice prong may be presumed. *United States v. Cronic*, 466 U.S. 648 (1984).

The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing . . . . But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

*Id.* at 656-57.

For example: "[I]f the accused is denied counsel at a critical stage of his trial [or] . . . if counsel *entirely fails* to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659 (emphasis added) (footnote omitted). In such a case, it is not necessary to demonstrate actual prejudice. *Rickman v. Bell*, 131 F.3d 1150, 1155 (6th Cir. 1997). Moreover, a defendant may demonstrate the "constructive" denial of counsel when, although counsel is present, "'the performance of counsel [is] so inadequate that, in effect, no assistance of counsel is provided.'" *Cronic*, 466 U.S. at 654 n.11 (quoting *United States v. Decoster*, 624 F.2d 196, 219 (D.C. Cir. 1976) (MacKinnon, J., concurring)).

Whether the failure to introduce any mitigating evidence and the waiver of final argument in the sentencing phase of a death penalty case constitute ineffective assistance of counsel must be determined on a case-by-case basis. The failure to present mitigating evidence in a death penalty case does not necessarily constitute ineffective assistance of counsel, *see Darden v. Wainwright*, 477 U.S. 168, 184-87 (1986); *see also Moore v. Reynolds*, 153 F.3d 1086, 1105 (10th Cir. 1998), *cert. denied*, 526 U.S. 1025 (1999), although given the uniqueness of the death sentence, the absence of any mitigating evidence, combined with a waiver of oral argument, plainly raises a "red flag." When the waiver of final argument is part of a legitimate trial strategy, great

was actually prejudiced as a result of the claimed constitutional error, *United States v. Frady*, 456 U.S. 152, 167-69 (1982).

If the claims presented in the federal court were never actually presented in the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted, but are procedurally barred. *Coleman*, 501 U.S. at 752-53.

Under Tennessee law at the time of Cone's conviction, grounds for relief that had been previously determined or waived were not cognizable in a state post-conviction action. Tenn. Code Ann. § 40-30-111 (1990) (since repealed). Moreover:

(a)   A ground for relief is "previously determined" if a court of competent jurisdiction has ruled on the merits after a full and fair hearing.

(b)(1) A ground for relief is "waived" if the petitioner knowingly and understandingly failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.

(2)   There is a rebuttable presumption that a ground for relief not raised in any such proceeding which was held was waived.

Tenn. Code Ann. § 40-30-112 (1990) (since repealed).

A federal court will not grant *habeas corpus* relief unless the state adjudication of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (West Supp. 2000).

## V.

### The *Brady* Claim

The first of Cone's claims before us is his assertion that the state prosecutors withheld exculpatory documentary evidence from him in violation of the rule announced in *Brady v. Maryland*, 373 U.S. 83 (1963). The *Brady* rule requires the government "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). A *Brady* violation is grounds for setting aside a conviction or sentence only if the failure to declare the relevant material "undermines confidence in the verdict, because there is a reasonable probability that there would have been a different result had the evidence been disclosed." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998), *cert. denied*, 528 U.S. 842 (1999).

The respondent argues that this claim has been procedurally defaulted under Tennessee law and therefore may not be entertained here. Cone argues that he has not procedurally defaulted his *Brady* claims because he was unable to raise the claims in his first and second petitions for post-conviction relief because he did not then know the alleged *Brady* material existed. He also argues he has "cause" for any procedural default because some of the allegedly withheld documents were only recently available to him through discovery in 1997. He then proceeds to argue the merits of his *Brady* claim. Although it is a difficult question, we believe that Cone's claims are procedurally defaulted and that he cannot show cause and prejudice to overcome the default. And even if that were not so, we are satisfied that the documents Cone complains were withheld are not *Brady* material.

### A.

Cone claims the documents that were withheld by the state prosecutors fall into four groups: (1) evidence regarding his drug use; (2) evidence that might have been useful to impeach

Cone raised the issue for the third time in his petition for a writ of *habeas corpus* in the federal district court. The respondent does not argue that Cone's ineffective assistance of counsel claim based on the lack of mitigating evidence at sentencing and the failure to make a final argument is procedurally defaulted. Therefore, the claim is properly before us.

A claim of ineffective assistance of counsel presents mixed questions of law and fact which this court reviews *de novo*. *United States v. Jackson*, 181 F.3d 740, 744 (6th Cir. 1999). To repeat, in order to succeed on an ineffective assistance of counsel claim, a petitioner must show:

First, . . . that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.

Under the first prong of *Strickland*, we must determine whether Cone's counsel, in remaining completely silent during the sentencing phase of the trial, except to declare that he "rested"—offering no evidence in mitigation and declining to address the court and jury—acted within an objective standard of reasonableness. *Olden v. United States*, 224 F.3d 561, 565 (6th Cir. 2000). If he did not, we must then turn to the second prong of *Strickland* and determine whether the petitioner has demonstrated a reasonable probability that he would not have been sentenced to death but for his counsel's failure. *Strickland*, 466 U.S. at 693-94.

Amendment's guarantee of the effective assistance of counsel. . . .

In reference to the waiver of final argument in the penalty phase it was clear [from] testimony from the record that this was strategy on the part of defense counsel, in view of the prosecutor's . . . reputation for devastating closing arguments.

This decision was affirmed on appeal to the Tennessee Court of Criminal Appeals, which stated in part:

One of the prosecuting attorneys made a low-key opening argument after the punishment hearing. It was trial counsel's judgment that he should waive argument to prevent the other prosecuting attorney from making closing argument. The other prosecutor was capable of making very devastating closing arguments and he could not be answered by defense counsel. This is a legitimate trial tactic, the exercise of which furnishes no basis for a finding of ineffective assistance.

*Cone*, 747 S.W.2d at 357.

Cone raised this issue again in his second petition for post-conviction relief. At that time, the Tennessee court determined that the claim was either previously determined or waived and the court dismissed it. On appeal, the Tennessee Court of Criminal Appeals reversed. The court cited *Swanson*, 749 S.W.2d 731, for the proposition that a petition for post-conviction relief, which stated a colorable claim for relief, should not be dismissed as having been waived without an opportunity to show the lack of waiver, unless waiver is clear. The court remanded the case to allow Cone to "rebut the presumption of waiver." However, on remand, the trial court determined that all of Cone's ineffective assistance of counsel claims—those relating to the guilt phase and those relating to the sentencing phase—should be considered as one claim.

the testimony and credibility of Officer Ralph Roby; (3) FBI reports; and (4) evidence showing that the prosecution's witness, Ilene Blankman, was untruthful and biased. We will take up each category of documents separately and then discuss whether they are *Brady* material at all.

### 1.

First, Cone claims that the prosecution withheld several witnesses' statements which indicate that the prosecution knew about Cone's drug use. These include: a statement by Robert McKinney, who stated he was present at the time of the robbery, and that Cone "acted real weird" and appeared to be on drugs; statements from Charles and Debbie Slaughter that Cone "looked wild eyed" the day before the killings; a statement by Sergeant Grieco of the Pompano Beach, Florida, Police Department who described Cone as looking "frenzied" and "agitated" a few days after the killings; and a statement from Chief Daniels of the Lake Village, Arkansas, Police Department who informed authorities that Cone "was a heavy drug user."

Cone claims that his "amphetamine psychosis" defense—essentially an insanity defense—was undercut because the prosecution withheld these documents from his examination. Each of the statements was part of the state District Attorney's files, except for Chief Daniels's statement. It is difficult to discern from the record whether Chief Daniels's statement was for certain in the DA's files, nevertheless, it appears to be part of it. However, in his petition for a writ of *habeas corpus*, Cone admits Chief Daniels's statement was indeed part of the DA's files and that he had access to the files in 1992. Cone claims to have been unaware of their existence until 1992. Whatever the date of his discovery of the existence of these documents, it is clear that Cone learned of these materials well before his second and third amended petitions were filed on August 13 and October 5, 1993, respectively.

A careful examination of the state court proceedings reveals that before filing his petition for a writ of *habeas corpus* in

the federal court on July 1,1997, Cone three times raised a generalized claim in the state courts that the prosecution had withheld evidence. He raised the issue for the first time in his *pro se* amended petition for post-conviction review, dated June 1989, wherein he claimed that the prosecution had been withholding evidence. The Tennessee criminal court determined that the claim had been waived by failing to raise it in his direct appeal. This determination was affirmed on appeal. Cone raised the issue again in his second amended petition for post-conviction relief in August 1993, and this time claimed somewhat more specifically, that the prosecution had withheld evidence regarding Ilene Blankman. Finally, Cone raised the issue in his third amended petition for post-conviction relief in October 1993; this time his claim was that the state withheld exculpatory evidence that it knew of Cone's drug problem. This evidence, he claimed, included the statements by Charles and Debbie Slaughter, among others. The August 13, 1993 and October 5, 1993, amended petitions were dismissed by the trial court, which found that the claims had been previously determined or waived. This was affirmed on appeal. *Cone v. State*, 927 S.W.2d 579 (Tenn. Crim. App. 1995).

Although Cone is correct in his argument that he in fact raised in the state court this first of his four *Brady* claims—that the prosecution withheld evidence that the state knew of his drug use—and therefore, that this claim was exhausted, we may not review a claim that has been decided in the state court on an "independent and adequate" state ground, as was the case here. The independent and adequate state ground in this instance is the state court's finding that Cone's claims were previously determined or waived under Tenn. Code Ann. § 40-30-112 (1990) (since repealed). Thus, this first of Cone's four-part *Brady* claim is procedurally defaulted.

In addition, even if Chief Daniels's statement were not part of the DA's files, and Cone did not have access to it, it is not *Brady* material. The statement that Cone "was a heavy drug user" does not undermine our confidence in the verdict such

because we have vacated the death sentence for the reasons set forth below.

## X.

### The Death Sentence

Cone argues that his death sentence must be vacated because he was denied the effective assistance of counsel at his sentencing as guaranteed by the Sixth Amendment. He claims that at sentencing his counsel offered no evidence whatever in mitigation and made no argument of any sort prior to sentencing. We agree that Cone was denied the effective assistance of counsel, and accordingly, we must vacate his death sentence.

Before going to the merits of this issue, it is appropriate to describe its procedural route to this court. Cone raised the issue of the ineffectiveness of his counsel at sentencing in his first petition for post-conviction relief, arguing that his trial counsel was ineffective for failing to present mitigating evidence at the sentencing phase of the trial and for waiving final argument. The Tennessee court determined that the attorney's silence at Cone's sentencing was not ineffective assistance because it was part of the attorney's "strategy" to prevent the prosecutor from making a "devastating" closing argument, for which he was apparently well-known. The trial court stated, in its September 19, 1986, opinion on Cone's first petition for post-conviction relief:

> This Court finds from the facts and circumstances that [defense counsel] put a great deal of thought and preparation in this case; further, he pointed out he interviewed numerous family members and relatives whose testimony was contradictory and generally not helpful. He said his strategy was to get as much mitigation in during the guilt/innocence phase as he could. It is the opinion of this Court that the defense attorney's performance, including his decision not to introduce any evidence in mitigation, did not fall below the objective standard of reasonableness set by the Sixth

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Cone has utterly failed to meet the requirements of *Strickland* with respect to this issue. In the first place, he makes no independent argument, factual or legal, relating to his failure to raise the malice instruction issue in the state court of his attorney's performance. He merely invites us to "see" his argument that his counsel was constitutionally ineffective for failing to raise an altogether different instructional issue because "weaker" issues were raised and it was counsel's first capital case. Succinctly put, this sort of parenthetical instruction to this court to piece together a constitutional claim of ineffectiveness of counsel from the language Cone used in presenting the claim with a different instructional issue early in his brief does not meet his obligation under *Strickland*. Even if we were to heed Cone's instruction to us to assemble his ineffective assistance of counsel argument for him, the argument would fail because (1) counsel's failure to raise every conceivable issue on appeal that might have been raised, even issues arguably stronger than those that were raised, and (2) handling one's first capital case, are not, *per se*, "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

In addition, as we have said, Cone makes no claim whatever that he was prejudiced as a result of the trial court's malice instruction.

For these reasons, Cone has not satisfied his burden under the cause and prejudice test, and we may not therefore reach the procedurally defaulted malice instruction issue.

## IX.

### Cruel and Unusual Punishment

We decline to address Cone's Eighth Amendment cruel and unusual punishment argument and his argument concerning the application of aggravating circumstances

that a reasonable probability exists that the verdict would have been different, because of the overwhelming evidence of Cone's guilt.

### 2.

The second of Cone's *Brady* claims is that the prosecution withheld evidence that Cone might have used to impeach the credibility of Officer Roby. According to Cone's interpretation of Officer Roby's testimony, the officer testified that there was no evidence that Cone had used drugs. According to Cone, the documents withheld from him included an All Points Bulletin sent out by Officer Roby, in which Roby warns the nation that Cone is not only a "drug user," but a "heavy drug user," and evidence that Cone's sister told Officer Roby that Cone had a "severe psychological problem" and "needed to work on his drug problem." Cone claims these two pieces of evidence show the falsity of Officer Roby's testimony that Cone was not a drug user. These two items of evidence were indeed part of the state DA's files and arguably fall within Cone's claim that the state withheld exculpatory evidence regarding his drug use, a claim he raised in his third amended petition for post-conviction relief.

The state court ruled that the claim had been previously determined or waived by Cone's failure to raise it earlier. This determination was affirmed on appeal. *Cone*, 927 S.W.2d 579. Again, we will not review a claim that has been determined under an independent and adequate state ground, and therefore this claim, likewise, is procedurally defaulted.

### 3.

Cone's third *Brady* claim is that certain FBI reports were withheld from him. He argues that several documents demonstrate that the FBI knew he had a severe drug problem, and that had Cone known of these documents at trial, he might have used them to impeach FBI Agent Eugene Flynn's testimony that Cone was not insane. The evidence included a nationwide FBI alert indicating Cone was a heavy drug user

and an FBI document showing Cone was in possession of amphetamines in the late 1970s. In addition, Cone complains that Agent Flynn had access to a report prepared by a witness, Dr. Jonathan Lipman, who testified against Cone. Cone claims that the presence of Dr. Lipman's report in the FBI files demonstrates that Dr. Lipman was not a disinterested witness.

It appears that Cone did not make a request for the FBI documents until after he filed his second petition for post-conviction review and then he requested only FBI reports regarding himself and Ilene Blankman. His request did not refer to Dr. Lipman's report. It further appears that all of this evidence was in the DA's files and could have been discovered by Cone in 1992. He could have raised this claim in the state court in 1993, however, he did not do so. Because this claim regarding the FBI materials and Dr. Lipman's report was not raised in the state court when Cone had the opportunity to do so, it is procedurally defaulted.

### 4.

Cone's fourth *Brady* claim is that the prosecutors withheld evidence that Cone might have used to impeach the testimony of prosecution witness Ilene Blankman. This witness testified at trial that Cone had never used drugs in her presence. The withheld evidence, according to Cone, is that the prosecution's file showed that the prosecutors had ongoing contact with Blankman, took her to dinner, and sent her a thank you letter after the trial was concluded and Cone was sentenced. This "withheld" evidence, Cone argues, might have been useful to impeach Blankman's credibility by showing her bias. As to whether Cone has exhausted this claim, it is true that he alleged in his second amended petition that the prosecution had withheld exculpatory evidence regarding Ilene Blankman. But the state court found that claim waived for not being raised earlier. Again, we do not review a claim that has been determined under an "independent and adequate" state ground, and thus it is

"knowingly and understandingly" waived timely assertion of a federal constitutional claim when his attorney has done so. We are satisfied that Tennessee follows the traditional rule that a petitioner is chargeable with his attorney's failure to timely assert a claim and with the consequences of failing to do so.

In one sentence, Cone claims that an additional cause for his failure to raise the malice instruction issue in the state court is the ineffectiveness of his state counsel. Cone makes no argument, factual or legal, in support of his assertion, but newly instructs the reader to "*See* pp. 56-58, supra." Reference to those pages indicates that Cone appears to be incorporating by reference his earlier argument with respect to the defaulted reasonable doubt/moral certainty instructional issue, that "trial and appellate counsel . . . may have been ineffective" because in the state court appeal, weaker legal issues were raised and "this was counsel['s] first capital trial and appeal."

Although it is well settled that the ineffective assistance of trial or appellate counsel may be cause sufficient to excuse a procedural default in raising a federal constitutional issue in state court, it is also settled that the petitioner must show both cause and prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51; *Frady*, 456 U.S. at 168-69. In this instance, while Cone claims ineffectiveness of counsel as the cause for his default, he does not claim any prejudice; he makes no mention of the prejudice prong of the cause and prejudice test at all.

For that reason alone, we would be justified in rejecting his ineffectiveness-of-counsel-as-cause argument. *See Frady*, 456 U.S. at 170. But Cone's argument fails for the more fundamental reason that he has not shown that his state counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Cone must show that in failing to raise the malice instruction issue in the state court, his "counsel's performance was deficient," which requires a "showing that counsel made errors so serious that counsel was

Coe had defaulted his claim under an "objective" standard of waiver. However, the petition upon which the court relied in finding the default was filed before *House* was decided. Thus, concerning defaults that occurred before *House* was decided, the Tennessee courts have strictly and regularly applied the traditional standard of waiver, whether the waiver is made by counsel or the petitioner personally.

The cases that Cone cites to support his position that a petitioner must "knowingly and understandingly" waive a constitutional right are not helpful because they are distinguishable from his case. Those cases are either: (1) unpublished (*Richardson v. Dutton*, No. 86-5437, 1987 WL 38229 (6th Cir. Nov. 18, 1987)); (2) determined after Cone filed his petition and thus he could not have relied on them (*Wooden v. State*, 898 S.W.2d 752 (Tenn. Crim. App. 1994), *Johnson v. State*, No. 02C01-9111-CR-00237, 1994 WL 90483 (Tenn. Crim. App. Mar. 23, 1994)); or (3) hold that a petitioner did not personally waive claims by not raising them earlier on the ground that the petitioner did not have counsel at the time (*Swanson v. State*, 749 S.W.2d 731 (Tenn. 1988), *Freeman v. State*, No. 70, 1988 WL 94769 (Tenn. Crim. App. Sept. 14, 1988)).

Cone's second reason why his claim cannot be defaulted also fails. He claims that there can be no valid procedural default unless all similarly situated petitioners have been found defaulted by the state courts. *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982). This is, essentially, an argument that the state ground is not considered adequate unless the procedural rule is strictly and regularly followed. *Id.* However, as explained in *Coe*, the Tennessee courts have strictly, regularly, and consistently followed the waiver rule in similar cases. *Coe*, 161 F.3d at 331.

Last, we are not persuaded that Cone is correct in his claim that Tennessee law was in a state of confusion on whether an "objective" or "subjective" standard of waiver is appropriate. It is not clear from the Tennessee cases that procedural default may not be charged to a petitioner who has not himself

procedurally defaulted. We conclude that Cone has procedurally defaulted all four of his *Brady* claims.

## B.

We must now inquire whether Cone has made a sufficient showing under the familiar "cause and prejudice" standard to excuse his procedural default. We first determine whether the three prerequisites to application of the cause and prejudice test have been established. We think they have. To repeat, they are: (1) that there is a state procedural rule applicable to Cone's claim and that he failed to comply with it; (2) that the state actually enforced the state rule; and (3) that Cone's noncompliance with the rule is an independent and adequate state ground for denying state review of a constitutional claim. *Maupin*, 785 F.2d at 138. As to the first requirement, the Tennessee waiver rule is plainly applicable to Cone's *Brady* claims; second, the Tennessee courts explicitly relied upon the waiver rule when deciding whether to consider Cone's post-conviction *Brady* claims; and third, the state's legitimate interest in requiring a defendant to raise all the claims he has at one time, thus avoiding multiple bites at the apple, is an independent and adequate state ground.

We are satisfied that Cone's *Brady* claims have been procedurally defaulted in the Tennessee courts, and so the next question is whether Cone has established cause and prejudice sufficient to excuse his procedural default. Cone must show that there is a reasonable cause for his failing to raise these claims timely, and if he makes that showing, that withholding the documents unfairly prejudiced him.

It is remarkable and significant that Cone does not argue in his brief before this court that there is a justifiable *cause* for his failure to raise his first, second, and fourth *Brady* claims in a timely manner in the state courts. Instead, he argues the merits of the claims. Cone's only mention in this court of his procedural default with respect to these three *Brady* claims appears in his reply brief, wherein he simply asserts that he raised the claims in state court and thus they are *not*

procedurally defaulted, a position contradicted by the findings of the Tennessee courts and by the record.

Moreover, but not surprisingly, Cone does not argue the prejudice prong of the cause and prejudice test. According to *Frady*, 456 U.S. 152, "a convicted defendant must show *both* (1) 'cause' excusing his . . . procedural default, *and* (2) 'actual prejudice' resulting from the errors of which he complains." *Id.* at 168 (emphasis added). Therefore, we have no occasion to consider whether Cone's procedural default with respect to the first, second, and fourth of his *Brady* claims is excused under the cause and prejudice standard and thus no authority to consider the claims on the merits.

Cone's third *Brady* claim, that FBI documents were allegedly withheld, was indeed raised, but only in Cone's petition for a writ of *habeas corpus* in the federal court; it was never raised in the state court. Cone argues that there is no state court procedural default with respect to this claim because the FBI records are privileged and were made available to him only through discovery granted by the federal district court in 1997, and thus he could not have successfully requested them in a timely fashion. Assuming without deciding that Cone has reasonable cause for not raising this issue timely in his state post-conviction proceedings (because he did not learn of the FBI records until 1997), the fact remains that he makes no argument that he was *prejudiced* as a result of the government's failure to disclose to him the existence of the FBI documents, and thus he completely ignores the prejudice prong of the cause and prejudice standard. We are satisfied that because he did not raise this claim in the state court and has not made a showing under the prejudice prong of the cause and prejudice standard that would excuse his default, we may not now review this claim.

In conclusion, Cone's default in failing to raise these claims in the state court and further default in failing in the federal court to justify that failure forecloses us from reaching the merits of those claims.

ground. However, if Cone is able to demonstrate cause and prejudice, his default would be excused.

Cone argues that even if he did fail to raise timely his claim of an erroneous jury instruction on malice, he has not defaulted the claim for several reasons. First, he did not give a personal "knowing[] and understanding[]" waiver, as required by the Tennessee statute, since he is not chargeable for any waiver made by his attorney. Tenn. Code Ann. § 40-30-112 (1990) (since repealed). Second, he argues that his claim cannot be defaulted because there can be no procedural default unless all similarly situated petitioners have been found defaulted by the state courts. Third, Cone claims that during the time of his state petitions for post-conviction relief, Tennessee law was in a state of confusion as to whether an "objective" or "subjective" standard was to be used in determining whether a claim was waived. Cone does not clearly explain his understanding of the difference between the "objective" and "subjective" standards to which he refers, and we do not find these terms helpful.

First, we are aware of two cases in which courts have considered whether a petitioner is bound by his attorney's waiver of a constitutional claim, *Coe*, 161 F.3d 320, and *House v. State*, 911 S.W.2d 705 (Tenn. 1995). The *House* court stated that "[w]aiver in the post-conviction context is to be determined by an objective standard under which a petitioner is bound by the action or inaction of his attorney." *House*, 911 S.W.2d at 714. *House* does not appear to announce a new standard, as Cone suggests. Rather, it seems merely to affirm Tennessee's standard of waiver.

In *Coe*, as we explained earlier, this court held that the petitioner had procedurally defaulted his state claim that the trial court failed to give a correct malice instruction. He presented the claim for the first time in his second petition for post-conviction relief rather than his first petition, as a consequence of which the Tennessee Court of Criminal Appeals found it had been procedurally waived. *Coe*, 161 F.3d at 329-31. This court cited *House* when determining that

substantially undercut by the prosecutor's remarks; rather, Cone simply did not present credible evidence that he was using drugs at the time he committed the murders. Under 28 U.S.C. § 2254(d), this decision does not appear to be contrary to, or involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court.

## VIII.

### Malice Instruction

Cone also claims that he was denied due process in that the state trial judge's instruction on malice was erroneous and unconstitutionally shifted the burden of proving this element to Cone.

Cone first raised a challenge to these instructions in his second petition for post-conviction relief. The Tennessee Court of Criminal Appeals determined that the claim had been previously determined or waived by failure to raise it earlier.

In Cone's petition for a writ of *habeas corpus*, Cone raised this issue again. However, the district court determined that this claim was procedurally defaulted. It based its decision on a procedurally similar case, *Coe*, 161 F.3d 320. In that case, the Sixth Circuit determined that the state rule was an independent and adequate ground that barred relief in this court, where the petitioner raised his claim in his second petition for post-conviction relief only, and the state court determined that his claim was previously determined or waived. In this case, the district court relied on the finding of the Tennessee Court of Criminal Appeals that Cone raised this claim in his second petition for post-conviction relief only and thus his claim was previously determined or waived. According to *Coe*, the Court of Criminal Appeals' decision constitutes an independent and adequate ground that bars the consideration of these claims in the district court.

We agree with the district court and find that this claim is procedurally defaulted on an independent and adequate state

## VI.

### Jury Instructions

Cone claims he was denied a fair trial because the trial court's jury instructions unconstitutionally equated "reasonable doubt" with "moral certainty." The challenged instruction was as follows:

> Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability, after such investigation, to let the mind rest easily as to the certainty of guilt. Reasonable doubt does not mean a captious, possible, or imaginary doubt. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required, and this certainty is required as to every proposition of proof requisite to constitute the offense.

Although Cone admits that the reasonable doubt instruction in his case was "similar" to the instruction given and approved in *Austin v. Bell*, 126 F.3d 843 (6th Cir. 1997), he alleges that he received an additional instruction that made the instructions, when taken as a whole, unconstitutional. The additional instruction stated:

> It is not necessary that each particular fact should be proved beyond a reasonable doubt if enough facts are proved to satisfy the jury beyond a reasonable doubt of all the facts necessary to constitute the crime charged. Before a verdict of guilty is justified, the circumstances, taken together, must be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion and producing in effect a moral certainty that the defendant, and no one else, committed the offense.

The Tennessee Court of Criminal Appeals determined that since Cone did not raise the reasonable doubt argument until his second post-conviction petition, he had defaulted this claim. The court determined that Cone should not be able to "delay the administration of justice *ad infinitum* by filing

subsequent petitions which disingenuously claim that the grounds asserted were unknown to the appellant when his previous petition was filed." *Cone*, 927 S.W.2d at 582. This is an independent and adequate ground that bars the consideration of these claims in this court. *Wainwright*, 433 U.S. at 87-88.

Cone argues that his jury instruction claim is not procedurally defaulted for three reasons. First, he violated no "clearly established" rule when he presented his claim in his second post-conviction petition, where he did not "knowingly and understandingly" fail to present the claim earlier, as required by Tenn. Code Ann. § 40-30-112(b). Second, he could not have defaulted his claim because there is no valid procedural default unless all similarly situated petitioners have been found defaulted by the state courts. Third, he has "cause" for failing to raise the claim earlier because he did not have effective trial or appellate counsel.

Assuming without deciding that Cone has not procedurally defaulted his claim, or, if he has, he can show cause and prejudice, his claim is meritless. A nearly identical instruction has been approved by this court in *Austin*, 126 F.3d at 846. The instructions, taken together and in the context in which they were given, did not allow the jury to convict in order to reach a mere "satisfactory conclusion," as Cone suggests. *See Victor v. Nebraska*, 511 U.S. 1, 16 (1994).

## VII.

### Other Claims

We find no fault with the district court's dismissal of the claim of prosecutorial misconduct. Cone claims that the prosecution's closing argument in the guilt phase of the trial was improper and that it undercut Cone's amphetamine psychosis defense. The prosecution's argument was that the money found in Cone's car suggested that Cone was a drug seller, not a drug user. This, despite the fact that the

prosecution knew that most of the money was stolen from a supermarket during Cone's crime spree.

Cone first raised this prosecutorial claim in the context of an ineffective assistance of counsel claim. The Tennessee Court of Criminal Appeals rejected the claim that the prosecution's argument affected the outcome of the trial when it rejected his first petition for post-conviction relief. *Cone v. State*, 747 S.W.2d 353, 355 (Tenn. Crim. App. 1987).

Cone next raised the claim in his second petition for post-conviction relief. The Tennessee Court of Criminal Appeals determined that Cone's claims had been either previously determined or waived. *Cone*, 927 S.W.2d 579.

In Cone's *habeas* petition, the federal district court determined that this claim was without merit. The court found that this argument exaggerated the importance of the prosecutor's statement and ignored the fact that there was other evidence that Cone was indeed using drugs. Cone did not convince the district court that the state court's rejection of this claim "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States" under section 2254(d)(1). Rather, the district court determined that Cone's "out-of-his-mind-on-amphetamines" defense was not rejected by the jury because the prosecutor accused him of being a drug seller, but because Cone failed to present credible evidence that he had actually abused amphetamines at any time close to the murders.

In order to make a claim for prosecutorial misconduct, a defendant must demonstrate that: "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Coe*, 161 F.3d at 343.

We find that the statements made by the prosecutor referring to Cone as a drug seller are not material, and we agree with the district court that the statement was too remote from the real issues in this case to have affected the jury's deliberations. Cone's drug psychosis defense was not