Leonard O'Neil TURNER,
Petitioner–Appellant,

v.

Robert KAPTURE; David Gundy,
Respondents–Appellees.

Nos. 02–1266, 02–1369.

United States Court of Appeals,
Sixth Circuit.

Dec. 13, 2002.

Before BOGGS, SILER, and GIBBONS, Circuit Judges.

### ORDER

These are two separate, consolidated appeals from the same district court judgment denying the relief sought in a federal habeas corpus petition filed pursuant to 28 U.S.C. § 2254. These cases have been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In 1997, a Michigan state court jury found Leonard O'Neil Turner guilty of felony-firearm and second degree murder for the shooting death of Turner's estranged wife. A Michigan appellate court affirmed Turner's conviction and respective sentences of two years plus twenty-five to fifty years. Turner filed a petition for a writ of federal habeas corpus relief in 2000 in which he raised three constitutional challenges to his conviction. The district court denied the relief sought and granted Turner a certificate of appealability on one compound issue only. Turner thereafter took two successive notices of appeal from the same judgment.

The issue on appeal is whether the district court properly decided that Turner was not entitled to a writ of habeas corpus based on his two-part ground for relief raising related issues based on the holding in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This court's review of the judgment on appeal is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides that a federal court may grant a writ of habeas corpus to a person in custody pursuant to a state court judgment only if the state court adjudication of the claim: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An application is not "objectively unreasonable" merely because the federal court believes it to be erroneous or incorrect. "Rather, that application must also be unreasonable." *Id.* at 411. A district court's decision to deny a § 2254 petition is subject to de novo review. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir.1998), although the findings of fact are reviewed for clear error. *Cone v. Bell*, 243 F.3d 961, 967 (6th Cir.2001). An examination of the record and law under these standards supports the district court's judgment on appeal.

On February 19, 1996, at approximately 7:40 p.m., a Detroit, Michigan, emergency "911" operator received a call from Turner in which Turner said that he had just shot his wife. Detroit police Officers Chalou and Brooks, the latter of whom actually heard the 911 call, responded to the address thirty minutes later. The two officers proceeded to the address where they were met by Turner. The officers asked Turner what had happened and Turner replied that he had shot his wife. The officers entered the residence, saw the victim on the floor with a gunshot wound, and the officers then "tried to find out more information from Mr. Turner what had happened." Turner told the officers that two African–American men had forced their way into the residence to buy drugs and Turner told them he didn't sell drugs. Turner then said that one of the intruders pulled a gun, the victim jumped in between the men and the gun went off. The police officers, when confronted with a story of two perpetrators, attempted to get a description of them from Turner. At this point, Turner became enraged and denied knowing any further details. Turner eventually threw a chair against a wall, causing the officers to place Turner in restraints and took him to the police station. It appears without contradiction that, at no time, did either of the officers formally advise Turner of his *Miranda* rights at the crime scene. Trial counsel for Turner ob-

jected to the jury hearing this testimony, on the grounds that Turner made these statements without having received his *Miranda* warnings, but the district summarily overruled this objection.

The jury also heard evidence of two later statements made by Turner after he had been taken into custody and given *Miranda* warnings. The first, offered on February 19, 1996, was a statement by Turner essentially fleshing out his claim that the shooting was the result of an argument between Turner and two armed men who came to the residence looking for drugs. The second statement was taken from Turner the following day. Turner was again advised of his *Miranda* rights and gave a radically different account of the shooting. Turner said that he and the victim were sitting at the dining room table and were discussing the possibility of the victim returning to live with Turner. Turner stated that he was "fiddling" around with a loaded handgun during the discussion and the described the shooting as follows:

I had squeezed the trigger so the hammer would go back. I was trying to pull it back and cock it. I had had two empty spaces, cylinders, and four bullets in the gun. I was looking right at the empty holes and I was pulling the hammer back trying to ease it down when it fired. Rolanda [the victim] was sitting in the chair in front of me at the table when she got up and the gun went off.

Turner went on to describe how he had attempted to make the scene look as if the shooting had been the product of an aborted robbery attempt, even going so far as to shoot into the floor before driving around the block and throwing the gun from the window. The officer who took the statement subsequently retrieved the gun based on Turner's description of the area where he discarded it. The trial court also overruled defense counsel's ob-

jection to the introduction into evidence of the foregoing statements. The jury found Turner guilty of the felon/firearm count and of second degree murder and Turner took a direct appeal.

The Michigan appellate court considered Turner's claim of trial error with regard to the admission of the crime scene statements as well as his later incriminating statements at the station house. The court concluded that the trial court did not err in admitting the crime scene statements, and the court also concluded that there was no reversible error in the admission of the inculpatory statement Turner made in custody. The Michigan Supreme Court declined to hear an appeal from this decision.

Turner made the same arguments to the district court concerning these two statements in his § 2254 petition and the court rejected them on the same legal grounds (citing federal law instead of essentially identical Michigan law) as did the state court. Turner was given permission to raise these claims again in the present appeal.

■ The district court did not err in declining to grant the writ on the grounds in issue. *Miranda* warnings deal only with "the admissibility of statements obtained from an individual who is subjected to custodial police interrogation." *Miranda*, 384 U.S. at 439 (1966). There is no requirement for police officers to administer *Miranda* warnings to everyone whom they question. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). Police must administer the warnings only "where there has been such a restriction on a person's freedom as to render him in custody." *Id.* Whether one is in custody depends upon "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Of particular

relevance to the appeal at bar is the notion that general on-the-scene questioning by police officers as to facts surrounding a crime or other general questioning of persons at the scene is not affected by the holding in *Miranda*. *Miranda*, 384 U.S. at 477.

An examination of Turner's on-the-scene statements under the foregoing standard shows that he was plainly not entitled to any *Miranda* warnings where he immediately blurted out, to the arriving officers, that he had shot his wife and then proceeded to give the officers a reason to question him further in an effort to apprehend the two alleged perpetrators. The officers' focus was plainly on the capture of these two other suspects and Turner himself is responsible for any additional questioning in this vein. The district court was correct in concluding that the Michigan state court's findings to this effect were neither contrary to, or an unreasonable application of, controlling federal law. The claim lacks merit.

█ The second aspect of Turner's *Miranda*-based claim, that is, that his initial coerced statements caused him to make the second, more damaging statements, has even less merit. Although the Supreme Court has recognized the hypothetical psychological effect of the "cat out of the bag" theory to the extent that the later confession may always be partially the result of the first, *United States v. Bayer*, 331 U.S. 532, 540, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947), the Court held that a coerced confession does not "perpetually disable[ ] the confessor from making a usable one" in new circumstances. *Id.* at 541. In *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Court relied on *Bayer* for the proposition that "this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a

usable one after those conditions have been removed." *Id.* at 311 (quoting *Bayer*, 331 U.S. at 540–41). Ultimately, the question is not whether the first confession caused the second confession but whether the second confession was voluntary. *United States v. Daniel*, 932 F.2d 517, 519–521 (6th Cir.1991). In the case at bar, the uncontradicted testimony of the officer who took the final, damaging statement was that Turner had received, and acknowledged, his full panoply of *Miranda* warnings before making the statement. In the absence of any other possible indicia of coercion, the district court properly concluded that the Michigan state court again correctly cited and interpreted relevant, controlling federal law.

Accordingly, the district court's judgment is affirmed. Rule 34(j)(2)(C), Rules of the Sixth Circuit.