*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0064P (6th Cir.)
File Name: 04a0064p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————

GARY BRADFORD CONE,
  *Petitioner-Appellant,*

  *v.*

RICKY BELL, Warden,
  *Respondent-Appellee.*

No. 99-5279

———————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-02312—Jon Phipps McCalla, District Judge.

Argued: September 10, 2003

Decided and Filed: March 1, 2004

Before: MERRITT, RYAN, and NORRIS, Circuit Judges.

———————

#### COUNSEL

**ARGUED:** Paul R. Bottei, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Jennifer L. Smith, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Paul R. Bottei, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, Robert L. Hutton, GLANKLER BROWN, Memphis, Tennessee, for

Appellant. Jennifer L. Smith, Tonya G. Miner, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

RYAN, J., delivered the opinion of the court. MERRITT, J. (pp. 25-36), delivered a separate concurring opinion. NORRIS, J. (pp. 37-38), delivered a separate dissenting opinion.

———————

#### OPINION

———————

RYAN, Circuit Judge. Gary Bradford Cone was sentenced to death in a Tennessee state court for a double murder of an elderly couple and his conviction and death sentence were affirmed by the Tennessee Supreme Court.

On this appeal from the district court's denial of Cone's petition for *habeas corpus* relief, we are asked to decide

- Whether Cone was sentenced to death in violation of the prohibition against cruel or unusual punishment of the Eighth Amendment of the United States Constitution.

Before we may reach that question, however, we must resolve two rather complex and interrelated questions of state procedural law.

- The first, is whether, under Tennessee law, the state supreme court implicitly reviews death penalty sentences for arbitrariness, even in cases in which the issue is not raised explicitly.

- The second, is whether the petitioner procedurally defaulted, in the state court, the Eighth Amendment issue he asks us to decide.

Our answer to the first state law question is yes, and to the second, it is no. Given our resolution of these issues, we are authorized to reach the Eighth Amendment issue, for which the petitioner has brought this appeal. As to that issue, we hold that petitioner Cone's death sentence must be vacated because one of the statutory aggravating circumstances the jury relied upon in imposing the death sentence—that the murders were "especially heinous, atrocious, or cruel"—is unconstitutionally vague, and therefore, violates the Eighth Amendment.

## I.

Cone was sentenced to death in a Tennessee court in 1982 following his conviction for the brutal murders of an elderly couple, Shipley and Cleopatra Todd. The facts of the case are fully detailed in our previous decision in *Cone v. Bell*, 243 F.3d 961 (6th Cir. 2001), *rev'd*, 535 U.S. 685 (2002), and need not be recounted here. It is necessary, however, to detail the procedural history of the case in order to explain why we have the case on appeal for a second time and to explain the basis for the State's argument that Cone has procedurally defaulted the Eighth Amendment issue he now asks us to decide.

Cone challenged his conviction and sentence on direct review in the Tennessee Supreme Court, which conducted a mandatory death penalty review pursuant to Tenn. Code Ann. § 39-2-205 (1982) (current version at Tenn. Code Ann. § 39-13-206 (2003)). *State v. Cone*, 665 S.W.2d 87 (Tenn. 1984). The Tennessee court affirmed Cone's murder convictions, and then, as it was required to do, considered the validity of the aggravating circumstances relied on by the jury in imposing the death penalty. *Id.* at 94-96. Under Tennessee law as it existed at the time of Cone's conviction, a jury could impose the death penalty only if it found that the prosecution had proved, beyond a reasonable doubt, the existence of at least one of twelve aggravating factors. Tenn. Code Ann. § 39-2404(i) (1981) (current version at Tenn. Code Ann.

§ 39-13-204(i) (2003)). In Cone's case the jury found four aggravating factors, which were defined in the statute as follows:

(2) The defendant was previously convicted of one or more felonies, other than the present charge, which involve the use or threat of violence to the person.

(3) The defendant knowingly created a great risk of death to two or more persons, other than the victim murdered, during his act of murder.

. . . .

(5) The murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind.

(6) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another.

Tenn. Code Ann. § 39-2404(i) (1981). In its review of the jury's findings, the Tennessee Supreme Court first noted that the jury had failed to find one aggravating factor, that the crime was committed in the course of committing another felony (felony-murder), even though the evidence clearly would have supported it. *State v. Cone*, 665 S.W.2d at 94.

The court then reviewed the four aggravators the jury did find, and concluded (1) that the evidence supported the finding that Cone had been convicted previously of one or more felonies involving violence, *id.*; (2) that the evidence supported the finding that the murders were "especially heinous, atrocious, or cruel in that they involved torture or depravity of mind," *id.* at 94-95; (3) that the evidence supported the finding that the murders were committed for the purpose of preventing a lawful arrest or prosecution, *id.* at 95; and (4) that the evidence was *insufficient* to support the jury's affirmative finding that the petitioner "'knowingly created a

great risk of death to two (2) or more persons, other than the victim murdered, during [the] act of murder,'" *id.* (citation omitted). But the court found this error to be "harmless beyond a reasonable doubt" in light of the three other aggravating circumstances found by the jury and the court's conclusion that the jurors should have found, although they did not, the additional aggravator, that the petitioner was guilty of felony-murder. *Id.* Accordingly, the court affirmed Cone's death sentence. The constitutionality of the jury's finding that the murders were "especially heinous, atrocious, or cruel," which we hereafter refer to as the "HAC" aggravator, is a fundamental issue in this case.

Cone filed his first state post-conviction petition in the state trial court on June 22, 1984, attacking his conviction and death sentence. He alleged numerous violations of his rights under the United States Constitution including prosecutorial misconduct and the ineffective assistance of counsel at trial. The trial court held a hearing and denied Cone's petition. The Tennessee Court of Criminal Appeals affirmed the denial and the Tennessee Supreme Court declined Cone's request to appeal.

Approximately five years later, in June 1989, Cone filed a second state post-conviction petition, followed by several amendments. In this second petition, Cone alleged numerous constitutional violations including, for the first time, an Eighth Amendment claim that the language of the HAC aggravator considered by the jury in the sentencing phase was unconstitutionally vague. The trial court dismissed the second petition as barred by the successive petition restrictions of Tennessee's post-conviction statute, Tenn. Code Ann. § 40-30-111 (1990) (since repealed), holding that all the grounds raised in the second petition were barred because they either had been previously determined or were waived. This judgment was affirmed by the Tennessee Court of Criminal Appeals, and the Tennessee Supreme Court denied an application for permission to appeal. The United

States Supreme Court denied Cone's petition for a writ of *certiorari*.

Cone then filed a motion in federal district court to stay his execution. The district court granted the stay and Cone filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254. The district court denied the § 2254 petition and lifted the stay of execution. We then granted Cone's motion for a certificate of appealability.

After briefing and oral argument, we granted Cone's *habeas* petition with respect to his death sentence because we thought he had been unconstitutionally denied the effective assistance of counsel at sentencing. We found it unnecessary to decide several of Cone's other sentencing claims, including his "Eighth Amendment cruel and unusual punishment argument and his argument concerning the application of aggravating circumstances." *Cone*, 243 F.3d at 975. In *Bell v. Cone*, 535 U.S. 685 (2002), the U.S. Supreme Court reversed our decision on the ineffective assistance of counsel issue and remanded to this court for further proceedings, which we understand to mean consideration of the sentencing issues that Cone raised and we did not reach in our previous decision.

## II.

"An appellate court reviews a district court's decision to deny or grant a writ of habeas corpus *de novo*, but it reviews the district court's factual findings only for clear error." *Barker v. Yukins*, 199 F.3d 867, 870 (6th Cir. 1999).

## III.

Initially, we must take up the State's argument that Cone's Eighth Amendment claim that the HAC aggravating factor was unconstitutionally vague, first raised in his second petition for post-conviction relief, had been procedurally defaulted. We address this issue first because, as a general

rule, on *habeas* review, federal courts may not consider procedurally defaulted claims. *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000). A claim is procedurally defaulted if: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state courts actually enforced the procedural rule; and (3) the state courts' finding of noncompliance is an adequate and independent state ground for denying relief on the federal constitutional claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Under Tennessee law at the time of Cone's conviction, grounds for relief that had been previously determined or waived were not cognizable in a state post-conviction action. Tenn. Code Ann. § 40-30-111 (since repealed). In its consideration on appeal of the denial of Cone's second post-conviction petition, the Tennessee Court of Criminal Appeals refused to address Cone's constitutional challenge to the HAC aggravator because, according to the court, it had been either previously determined or waived. *Cone v. State*, 927 S.W.2d 579, 582 (Tenn. Crim. App. 1995). Of these two possibilities, "previously determined" or "waived," we must determine which one actually describes the status of Cone's constitutional claim in the state courts. If Cone waived his claim, then such waiver will constitute a procedural default and will serve as an adequate and independent state ground barring *habeas* review in this court. If Cone's claim was previously determined, then we must decide whether the state courts' determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (West Supp. 2003).

Cone argues that he did not procedurally default on his Eighth Amendment vagueness challenge to the HAC aggravating factor, because the Tennessee Supreme Court "necessarily reviewed" the claim as part of its mandatory death penalty review.

In death penalty cases the Tennessee Supreme Court is required to conduct a mandatory death penalty review to determine whether:

(1) The sentence of death was imposed in *any arbitrary* fashion;

(2) The evidence supports the jury's findings of a statutory aggravating circumstance or statutory aggravating circumstances;

(3) The evidence supports the jury's finding of the absence of any mitigating circumstances sufficiently substantial to outweigh the aggravating circumstance or circumstances so found; and

(4) The sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant.

Tenn. Code Ann. § 39-2-205(c) (1982) (emphasis added) (current version at Tenn. Code. Ann. § 39-13-206(c)(1) (2003)).

Tennessee responds that Cone's "necessarily reviewed" claim, also known as "implicit review," proves too much, since it would eviscerate the procedural default doctrine with respect to all constitutional claims.

The U.S. Courts of Appeals are divided on whether these state mandatory review statutes create an implicit review of constitutional challenges not explicitly raised. The Fourth, Eighth, and Eleventh Circuits all have rejected the implicit review argument. *See Mu'min v. Pruett*, 125 F.3d 192, 197 (4th Cir. 1997); *Nave v. Delo*, 62 F.3d 1024, 1039 (8th Cir. 1995); *Julius v. Johnson*, 840 F.2d 1533, 1546 (11th Cir. 1988). The Ninth Circuit reached the opposite conclusion in an Idaho death penalty case, albeit in *dicta*. *See Beam v.*

*Paskett*, 3 F.3d 1301, 1306 (9th Cir. 1993), *overruled on other grounds by Lambright v. Stewart*, 191 F.3d 1181 (9th Cir. 1999).

This court, in *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998), in *dicta*, expressed discomfort with the implicit review argument in the context of a challenge to jury instructions on unanimity in sentencing in a death penalty case in a Tennessee court. *Id.* at 336. We stated that the argument that "the [Tennessee] supreme court has to review significant errors, whether or not they were raised by the defendant," is "too broad, as it would eliminate the entire doctrine of procedural bar in Tennessee in capital cases." *Id.* Despite these reservations, we recognized in *Coe* that Tennessee courts had been moderately receptive to the implicit review theory. *Id.* For example, in *State v. Martin*, 702 S.W.2d 560 (Tenn. 1985), *overruled on other grounds by State v. Brown*, 836 S.W.2d 530 (1992), the Tennessee Supreme Court stated that it was "required by statute to review the sentence and to consider significant errors whether or not called to the attention of the *trial court*." *Id.* at 564 (emphasis added). We explained in *Coe* that, based on *Martin*, a procedural default could not arise under Tennessee law when a capital defendant raised an issue on appeal which he had failed to preserve properly during trial. *Coe*, 161 F.3d at 336. Thus, in *Coe*, we partially adopted the implicit review theory, but only to the extent of issues that were explicitly raised on appeal, even though not properly preserved in the trial court. Of course, unlike *Coe*, Cone's unconstitutional HAC aggravator issue was not explicitly raised either in the trial court or on direct review in the Tennessee Supreme Court.

The cases that divide the circuits on the implicit review theory agree on one point: "The scope of the state court's mandatory review is, ultimately, a question of state law." *Nave*, 62 F.3d at 1039. Accordingly, *if* Tennessee construes its mandatory review statute to encompass constitutional issues not explicitly raised on direct review, then the Tennessee Supreme Court must be deemed to have

considered the constitutionality of the HAC aggravator in this case, and Cone did not procedurally default on the claim.

It is important to frame this preliminary question of state law carefully. We understand the question to be whether it is the law in Tennessee that in all capital punishment cases, the Tennessee Supreme Court reviews the sentencing proceedings to ensure that the jurors have not imposed the death penalty "in any arbitrary fashion," Tenn. Code Ann. § 39-2-205(c) (1982), even in cases in which the issue is not raised on direct review.

Just three years ago, in *State v. West*, 19 S.W.3d 753 (Tenn. 2000), the Tennessee Supreme Court considered whether a defendant could raise an issue in his state post-conviction petition that he had not raised on direct review. *Id.* at 754. The court prefaced its discussion as follows:

> In this appeal of a post-conviction proceeding, . . . the appellant[] raises for the first time the issue whether evidence adduced at the sentencing phase of his trial was sufficient to support the jury's conclusion that he committed two murders for the purpose of avoiding arrest or prosecution. *Although [the appellant] casts the issue as concerning the evidentiary sufficiency of the (i)(6) aggravating circumstance, we think his grievance involves instead the constitutional issue of whether the aggravating circumstance narrows the class of death eligible offenders. He says that it does not, and because it does not, he contends that it violates the Eighth Amendment.*

*Id.* (emphasis added). The court's reference to "narrow[ing] the class of death eligible offenders" is responsive to the rule announced in *Zant v. Stephens*, 462 U.S. 862 (1983), that in capital punishment cases, the "aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty" in order to ensure that the jury's discretion in imposing the death sentence is "adequately . . . channel[ed]."

*Id.* at 877. Later Supreme Court cases have characterized death sentences imposed without appropriately narrowing instructions as having been imposed *arbitrarily* and upon criteria, *i.e.*, statutory aggravating factors, whose language is unconstitutionally vague. *See, e.g.*, *Tuilaepa v. California*, 512 U.S. 967, 974-75 (1994); *Sawyer v. Whitley*, 505 U.S. 333, 367 (1992) (Stevens, J., concurring).

The emphasized language in *West* is significant because the court characterized the issue as an Eighth Amendment vagueness challenge to a statutory aggravating factor, the precise issue raised by Cone. In *West*, the State argued that the defendant could not raise the vagueness issue in his post-conviction petition for two reasons: (1) he had failed to raise it on direct appeal and thus "waived" it; and, *alternatively*, (2) it had been "previously determined" due to the Tennessee Supreme Court's mandatory review. *West*, 19 S.W.3d at 756. The court agreed with the State, but, in a seeming contradiction, held that the vagueness issue had been *both* "previously determined" *and* "waived" as a result of West's direct appeal. *Id.* Specifically, the court stated:

> Under Tenn. Code Ann. § 40-30-112(b), when [the appellant] failed to raise the (i)(6) issue on direct appeal, he effectively blocked any consideration of this issue by this Court on post-conviction review. Additionally, under Tenn. Code Ann. § 39-2-205(c)(3) (1982) (repealed 1989), this Court was required in *all* cases in which the death penalty was imposed to *automatically* consider whether the "evidence supports the jury's finding of a statutory aggravating circumstance or statutory aggravating circumstances. . . ." Pursuant to these mandatory provisions, this Court found that the requirements of the statute had, in fact, been met in [the appellant's] case. Thus, we conclude that the issue under discussion has, indeed, been both "previously determined" and "waived," under the definitions provided in Tenn. Code Ann. § 40-30-112(a) and (b).

*Id.* (emphasis added) (internal citations omitted).

Although *West* appears to stand alone as direct support for the implicit review argument, other Tennessee Supreme Court cases lend moderate support. In *Martin*, discussed above, the court held that it was "required by statute to review the sentence and to consider significant errors whether or not called to the attention of the *trial court*." 702 S.W.2d at 564 (emphasis added). Likewise, in *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985), the court stated: "in cases where the defendant is under sentence of death, this court is under the duty to 'automatically' review the sentence, which imposes the burden on this court to consider any *alleged* error, whether called to the *trial court's* attention or not." *Id.* at 67-68 (emphasis added). Finally, in *State v. Nesbit*, 978 S.W.2d 872 (Tenn. 1998), the court held that the mandatory review statute gave it jurisdiction to review issues raised by the defendant's appeal despite the defendant's failure to timely file his appeal. *Id.* at 880-81. These three cases make clear that the Tennessee Supreme Court considers its task when conducting the required review to be important enough to warrant departures from procedural rules that would normally bar supreme court review. In each of these three cases, however, unlike this case, the issue was raised by the defendant on direct review.

The conceptual leap from claims explicitly raised on direct appeal, although not properly preserved, to claims not raised at all is significant and, without *West*, there would be no Tennessee authority for attempting it. Nevertheless, *West* cannot be ignored; neither can the Tennessee statute, which mandates supreme court review to assure that no death sentence is "imposed in any arbitrary fashion." Tenn. Code Ann. § 39-2-205(c)(1) (1982). It is also significant that the statute does not condition the mandatory review upon the issues named in the statute being properly raised. The following factors in *West* strongly favor the conclusion that it is the law in Tennessee that the supreme court "implicitly" reviews death sentences for arbitrariness, even if the issue is

not explicitly raised on direct appeal: (1) the language that in "all" death penalty cases, the court "automatically" complies with the mandatory review statute; (2) the court's re-characterization of the appellant's "evidentiary sufficiency" challenge as a vagueness (*i.e.*, arbitrariness) challenge; and (3) its holding that the same was "previously determined" (although never raised by the appellant). We can find no other logical construction to put upon the court's language in *West.*

We note, in passing, that the implicit review doctrine, as we apply it today in this case, does not foreclose the possibility that other death penalty defendants may procedurally default on other constitutional issues not raised on direct appeal. The language of Tennessee's mandatory review statute provides a basis to distinguish between vagueness challenges and other constitutional claims, since it requires the Tennessee Supreme Court to look specifically for sentences "imposed in any arbitrary fashion." The "evil" of vague sentencing instructions is, precisely, that they invite arbitrary decision-making. As the U.S. Supreme Court has stated: "our cases have insisted that the channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action." *Maynard v. Cartwright*, 486 U.S. 356, 362 (1988). Because there are other constitutional violations that do not pose this same risk, the implicit review principle we have applied today would not necessarily save those claims from procedural default.

We think that given the holding in *West*, and the court's language explaining it, we must conclude that the Tennessee Supreme Court implicitly considered and rejected Cone's unmentioned vagueness "challenge" to the HAC aggravator, in the course of its mandatory review. As such, Cone's claim must be deemed to have been decided on the merits during the direct appeal and, therefore, when the Tennessee lower courts disposed of the claim on procedural grounds they did so not

because the claim was "waived" but because it was "previously determined."

This conclusion would seem to be confirmed by the written findings of the state trial court dismissing Cone's second amended petition for post-conviction review. Referring to the specific paragraph of the petition in which Cone raised his vagueness challenge for the first time, the trial court stated: "grounds . . . [appearing in paragraph] 18 . . . involve[] a potpourri of various errors by the court at the trial all of which grounds *have been considered and denied* in direct appeal or the First Post Conviction Petition." *Cone v. State*, No. P-06874, slip op. at 4 (Crim. Ct. Tenn., 13th Judicial Dist., Dec. 16, 1993) (emphasis added). The Tennessee Court of Criminal Appeals, the last state court to render an opinion on Cone's petition, affirmed the holding of the trial court and, in fact, commended the trial court judge for his "exemplary and meticulous treatment of the appellant's petition." *Cone v. State*, 927 S.W.2d at 581. These statements by the lower state courts are in accordance with our holding today: that, under Tennessee law, Cone's vagueness challenge was not "waived," but "previously determined."

Therefore, although Cone failed to explicitly raise the vagueness challenge to the HAC aggravator, that claim was nonetheless implicitly decided on the merits by the Tennessee Supreme Court and it is a proper subject for federal *habeas* review.

## IV.

Finally, we turn to the merits of Cone's *habeas* claim that the HAC aggravator the jury considered in sentencing him to death is unconstitutionally vague, thus invalidating his sentence.

## A.

Our standard of review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). When a petitioner's claim has been adjudicated on the merits in a state court, a federal court may not grant a writ of *habeas corpus* with respect to such claim, unless the state court's determination:

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the f..acts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West Supp. 2003). A state court's decision must be evaluated against the clearly established Supreme Court precedent at the time the petitioner's conviction became final. *Williams v. Taylor*, 529 U.S. 362, 380 (2000). Moreover, as we explained recently:

A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Court's decision. A state court decision involves an "unreasonable application" of clearly established Supreme Court precedent when it correctly identifies the governing legal standard but applies it to the facts of the case before it in an objectively unreasonable manner.

*Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (internal citation omitted) (quoting *Williams*, 529 U.S. at 405, 409-10), *cert. denied*, 124 S. Ct. 99 (2003)

## B.

At sentencing, the jurors were instructed that they could not impose the death penalty unless they unanimously found, beyond a reasonable doubt, at least one of eleven statutory aggravating factors, including whether "[t]he murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind." In a limiting instruction, the court then defined some of the terms of this aggravating factor:

"Heinous" means extremely wicked or shockingly evil. "Atrocious" means outrageously wicked and vile. "Cruel" means designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the suffering of others, pitiless.

The jurors found that Cone's crime was "especially heinous, atrocious, or cruel." They did not add, on their verdict form, the words, "in that it involved torture or depravity of mind." However, we do not think that omitting that verbiage when announcing the verdict is of any constitutional significance.

Cone argues that the HAC aggravator is "clearly unconstitutional" based upon the holding of *Godfrey v. Georgia*, 446 U.S. 420 (1980). *Godfrey* held that the Georgia statutory aggravator, "that the offense 'was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim,'" *id.* at 422 (citation omitted), was unconstitutionally vague, because there was "nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence," *id.* at 428.

The State responds first, that the language of the Tennessee HAC aggravator, as further defined and limited by the trial court, is not the language found to be vague in *Godfrey*, and second, that the HAC aggravator in Cone's case was not "contrary to . . . clearly established" U.S. Supreme Court

precedent as it stood at the time of Cone's direct appeal. That precedent, the State argues, was established in *Proffitt v. Florida*, 428 U.S. 242 (1976), decided eight years before Cone's conviction became final, in which the Court held that Florida's HAC aggravator was not unconstitutionally vague in light of the Florida courts' narrowing construction that the term "heinous, atrocious, or cruel" means a "'conscienceless or pitiless crime which is unnecessarily torturous to the victim.'" *Id.* at 255-56 (citations omitted). This narrowing language is the identical language the Tennessee Supreme Court used in narrowing Tennessee's HAC aggravator in *State v. Dicks*, 615 S.W.2d 126, 132 (Tenn. 1981), a case decided three years before the court's "implicit review" of Cone's case. Moreover, the State argues, it must be presumed that the Tennessee Supreme Court evaluated the Cone jury's reliance upon the HAC aggravator using the same narrowing construction adopted in *Dicks*. The State also reminds us that the U.S. Supreme Court held in *Williams*, 529 U.S. 362, that the state court's decision must be evaluated against the "clearly established" Supreme Court precedent at the time the petitioner's conviction became final. *Id.* at 380.

One thing is clear: No Supreme Court case has addressed the precise language at issue in this case. As we will show, the cases decided *after* Cone's conviction became final indicate clearly that the language of the HAC aggravator the jurors used to sentence Cone to death–"especially heinous, atrocious, or cruel in that it involved torture or depravity of mind"–is unconstitutionally vague. Normally, post-*Cone* decisions would be immaterial, but, as will be seen, the Supreme Court's fairly recent application of its doctrine of the "non-retroactivity" of new constitutional rules, in the context of an Eighth Amendment vagueness challenge to a death penalty instruction, makes several post-*Cone* Supreme Court decisions not only material, but controlling.

In 1988, in *Maynard v. Cartwright*, 486 U.S. 356, a death penalty case from Oklahoma, the Supreme Court explicitly relied upon *Godfrey* (the "outrageously or wantonly vile,

horrible or inhuman" aggravator) to hold that Oklahoma's HAC aggravator was unconstitutionally vague, *id.* at 363-64, but implied that had Oklahoma's HAC aggravator been further limited by a "torture or serious physical abuse" instruction, it might have been constitutional, *id.* at 365. Nonetheless, two years later, in *Shell v. Mississippi*, 498 U.S. 1 (1990) (*per curiam*), the Supreme Court announced that the "heinous, atrocious, or cruel" language, along with the same "limiting" definitions as were provided to the jury in Cone's case, was unconstitutional. *Id.* at 1. The HAC aggravator in *Shell*, however, did not have the "torture or depravity" qualifier that is attached to the HAC aggravator in Cone's case. In *Walton v. Arizona*, 497 U.S. 639 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002), the Court stated, "there is no serious argument that Arizona's 'especially heinous, cruel or depraved' aggravating factor is not facially vague." *Id.* at 654.

Despite the confusion resulting from these cases (or perhaps because of it), the Supreme Court, in *Stringer v. Black*, 503 U.S. 222 (1992), came at the subject from a different angle. It addressed the "new rule" non-retroactivity doctrine as respects *Godfrey*, the pre-*Cone* decision, and *Maynard*, the post-*Cone* decision.

> [T]he language [in *Maynard* ("especially heinous, atrocious or cruel")] gave no more guidance than did the statute in *Godfrey* [("outrageously or wantonly vile, horrible or inhuman")]. . . .
>
> . . . *Godfrey* and *Maynard* did indeed involve somewhat different language. But it would be a mistake to conclude that the vagueness ruling of *Godfrey* was limited to the precise language before us in that case. In applying *Godfrey* to the language before us in *Maynard*, we did not "brea[k] new ground."

*Id.* at 228-29 (quoting *Butler v. McKellar*, 494 U.S. 407, 412 (1990)). The "break new ground" terminology refers to the

rule announced in *Teague v. Lane*, 489 U.S. 288 (1989), that if a decision announces a "new" constitutional rule, it is not to be applied retroactively to convictions that have already become final when the new decision is announced, subject to two narrow exceptions not applicable here. A "new [constitutional] rule" is one that "breaks new ground" or imposes new obligations on the states or federal government. *Id.* at 301. "[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* (emphasis omitted).

Given this old rule/new rule definition, the language of *Stringer*, that *Maynard* did not "break new ground," strongly suggests that the Supreme Court considers *Godfrey* to have clearly established the unconstitutionality of the HAC aggravator as early as 1980. Although *Stringer* dealt with a pre-AEDPA retroactivity issue, the Supreme Court in *Williams v. Taylor*, 529 U.S. 362, explained that the "clearly established law" requirement codified the old rule/new rule doctrine of non-retroactivity that prevailed before AEDPA. *Id.* at 379-80, 412; *see also Harris v. Stovall*, 212 F.3d 940, 944 (6th Cir. 2000). Indeed, the Court cited *Stringer* as an example of the old rule/new rule doctrine codified by AEDPA's "clearly established law" requirement. *Williams*, 529 U.S. at 412.

Although none of these Supreme Court decisions is "on all fours" with the instruction in Cone's case, in the final analysis, *Stringer*'s statement that *Maynard*'s invalidation of Oklahoma's HAC aggravator was an "old rule" dictated by *Godfrey*, points ineluctably to the conclusion that *Godfrey* represents a "clearly established" Supreme Court precedent dictating that Tennessee's HAC aggravator is unconstitutionally vague. Although it is true that the HAC aggravator in Cone's case contained the additional words "in that it involved torture or depravity of mind," all of those words except "torture" have been held to be too vague, on the basis of *Godfrey*. Since *Maynard* was dictated by *Godfrey*, it is difficult to imagine how any of the other cases addressing

very minor variations on the instruction in *Maynard* and *Cone* would not also be dictated by *Godfrey*.

There remains, of course, the question whether the Tennessee Supreme Court's narrowing construction of Tennessee's HAC aggravator, announced in 1981 in *Dicks*, 615 S.W.2d at 132, that Tennessee's HAC aggravator should be read as meaning "conscienceless or pitiless crime which is unnecessarily torturous to the victim," the identical language that was approved in *Proffitt*, 428 U.S. at 255, "saves" the HAC aggravator in Cone's case.

The State argues that if we are to indulge the fiction, discussed earlier, that the Tennessee Supreme Court "implicitly reviewed" Cone's Eighth Amendment vagueness "challenge" to the HAC aggravator, a challenge Cone did not explicitly raise, we should also indulge the fiction that the court applied the "pitiless crime" narrowing construction it adopted for Tennessee's HAC aggravator three years earlier in *Dicks*, 615 S.W.2d at 132. Although this "implicit narrowing construction" argument would provide a nice symmetry to the earlier "implicit review" argument, we think the two, on close consideration, are actually asymmetrical. Here's why: The Tennessee court *explicitly* reviewed whether the HAC aggravator the jury found was supported by sufficient evidence, but in doing so, it did not apply, or even mention, any narrowing interpretation or cite to *Dicks*. Instead, the court simply, but explicitly, satisfied itself that the labels "heinous, atrocious, or cruel," without more, applied to Cone's crime. *State v. Cone*, 665 S.W.2d at 94-95.

Therefore, we conclude that the Tennessee Supreme Court's "implicit decision," upon mandatory review of Cone's death sentence, was that the HAC aggravator relied upon by Cone's jury in imposing the death sentence was not arbitrary and, consequently, not unconstitutionally vague. We hold that this decision by the Tennessee Supreme Court was contrary to clearly established U.S. Supreme Court precedent

as announced in *Maynard* and *Shell*, and made applicable to Cone's case via the rule of retroactivity explained in *Stringer*.

We are not in the least comfortable with this "implicit review" doctrine, but it is a matter of Tennessee, not federal, law, and we know of no other way to read and understand what the Tennessee Supreme Court said in *West*.

## V.

We must now consider whether the jury's erroneous application of two invalid aggravating factors was harmless error. The AEDPA standard of review *does not apply* to this question because no Tennessee court has considered this question. Thus, this is an independent harmless error inquiry, not a review of a state court's harmless error inquiry.

Cone contends that this court is not empowered to perform an independent harmless error inquiry; rather, he argues, this court must grant *habeas* relief so that state courts can perform a new sentencing calculus. He insists that prior Sixth Circuit cases, *Houston v. Dutton*, 50 F.3d 381 (6th Cir. 1995), and *Coe v. Bell*, 161 F.3d 320, are in conflict on this issue.

In *Coe v. Bell*, we held that this court was "permitted to perform a harmless-error analysis" to determine whether a Tennessee jury's reliance on the unconstitutional HAC aggravator required *habeas* relief. 161 F.3d at 334. We distinguished our previous decision in *Houston v. Dutton*, 50 F.3d at 387, on the ground that *Houston* had prohibited a federal *habeas* court from "re-weighing" but had not considered whether a federal *habeas* court could evaluate, in the first instance, the harmlessness of the jury's reliance on an invalid aggravator. *Coe*, 161 F.3d at 335. Thus, *Coe* drew a distinction between re-weighing and harmless error analysis and held that a federal *habeas* court is permitted to undertake the latter.

The applicable harmless error standard is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). The Supreme Court elaborated on this standard to some extent in *O'Neal v. McAninch*, 513 U.S. 432 (1995), by explaining: "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." *Id.* at 436 (internal quotation marks omitted); *see also DePew v. Anderson*, 311 F.3d 742, 751 (6th Cir. 2002), *cert. denied*, 124 S. Ct. 270 (2003), *and cert. denied*, 124 S. Ct. 83 (2003).

In *Coe v. Bell*, 161 F.3d at 335, we considered whether the jury's reliance on an unconstitutionally vague HAC aggravating factor had a "substantial and injurious effect" on the sentence. We concluded that it did not because the jury's sentencing verdict form indicated that "the jury [had] ignored the problematic 'depravity' factor and limited its finding to the appropriately narrowing 'torture' factor." *Id.* at 336. Thus, the error was harmless because the jury, effectively, had "channeled" its own discretion despite the failure of the instructions to do so. *Id.*

In *Abdur'Rahman v. Bell*, 226 F.3d 696 (6th Cir. 2000), *cert. denied*, 534 U.S. 970 (2001), we again considered the harmfulness of the jury's reliance on the unconstitutionally vague HAC aggravator. We remarked that "removing one aggravating circumstance from the sentencing calculus in a weighing state normally would require a re-weighing of the aggravating and mitigating factors." *Id.* at 711. We determined, however, that the jury's reliance on the HAC aggravator was harmless because, "even if the heinous, atrocious, or cruel aggravator is removed from the calculus, there is no mitigating evidence to weigh against the remaining . . . aggravators." *Id.*

In this case, when the jury made its sentencing determination it found four aggravating circumstances ((1) HAC; (2) great risk of death to others; (3) prior violent felonies; and (4) murder for purpose of avoiding arrest/prosecution), and weighed those against the mitigating evidence offered by the defense. This balancing process was infected by the weight of two invalid aggravating factors: (1) HAC, which was unconstitutionally vague, and (2) great risk of death to others, which was not supported by sufficient evidence.

The prosecutor specifically emphasized the HAC aggravator during his closing arguments at the sentencing phase of the trial. In contrast to *Coe*, 161 F.3d at 336, the jury here did not "channel[]" its discretion by ignoring the vagueness inherent in the HAC aggravator. Moreover, although the defense here offered no mitigating evidence at sentencing, the Supreme Court stated in *Bell v. Cone*, 535 U.S. at 699, that the defense put before the jury "the most compelling mitigating evidence in the case" during the guilt phase. The Court's observation thus distinguishes this case from *Abdur'Rahman*, in which we concluded that the HAC aggravator, if unconstitutionally vague, did not substantially affect the sentence due to the total absence of mitigating evidence.

The second invalid aggravator, "great risk of death to others," was found by the jury despite insufficient evidence, *State v. Cone*, 665 S.W.2d at 95, even though the prosecutor did not request the jury to find this aggravator. One could argue that this aggravator must have influenced the sentencing decision, since the jury found it without sufficient evidence and without being asked to do so by the prosecution. In any event, we conclude that these two invalid aggravators, together, if not individually, "'had substantial and injurious effect or influence in determining'" the jury's sentence. *Brecht*, 507 U.S. at 631 (citation omitted). The error, therefore, is not harmless.

## VI.

For the foregoing reasons, the district court's decision is **REVERSED** as to the petitioner's sentence. We **REMAND** to the district court with instructions to issue a writ of *habeas corpus* vacating the petitioner's death sentence due to the jury's weighing of an unconstitutionally vague aggravating factor at sentencing, unless the State conducts a new penalty phase proceeding within 180 days of remand.

---

## CONCURRENCE

---

MERRITT, Circuit Judge, concurring. I agree with the Court that this death case cannot be disposed of on grounds of procedural default, and I agree on the merits of the constitutional issue. I believe there are additional reasons that the Court is right and that the State's position is untenable.

### I. Procedural Default

In this case, the jury found that the crimes were "especially heinous, atrocious, or cruel in that [they] involved torture or depravity of mind." (J.A. at 235, 237 (verdict forms)). Pursuant to its statutory mandate, the state supreme court automatically reviews, *inter alia*, whether the sentence of death was imposed in any arbitrary fashion and whether the evidence supported the jury's finding of a statutory aggravating circumstance. *See* Tenn. Code Ann. § 39-2-205(c)(1), (2) (1982). On direct review in this case, the state supreme court expressly examined the evidence presented at trial and determined that the evidence was sufficient for the jury to find that the murders were "especially heinous, cruel, or atrocious in that they involved torture or depravity of mind." *State v. Cone*, 665 S.W.2d 87, 94-95 (Tenn. 1984).

In *State v. Harris*, the jury found three aggravating circumstances to support the death penalty, including that the crimes were "especially heinous, atrocious, or cruel in that [they] involved torture or depravity of mind." 839 S.W.2d 54, 59-60 & n.1 (Tenn. 1992). On direct appeal, the defendant did not raise any specific vagueness challenge to the aggravator or challenge the sufficiency of the evidence in support of it. Nevertheless, the state court clearly examined both aspects of the aggravator as part of its statutory review of the sufficiency of the evidence:

The Defendant has not challenged the sufficiency of the evidence to support the aggravating circumstances found by the jury to warrant imposition of the death penalty in this case. Nonetheless, as in all capital cases, under the directive of T.C.A. § 39-13-206(c)(1)(B) [formerly T.C.A. § 39-2-205(c)(2)], this Court has reviewed the evidence pertaining to the aggravating circumstances and concludes that it is sufficient to support the aggravating circumstances found by the jury in this case.

*Id.* at 76. Two dissenting justices would have held that sentence invalid based on the "heinous, atrocious, or cruel" aggravator as applied to the evidence in the case because the instruction did not sufficiently guide the jury's discretion as a matter of constitutional law. Noting that the jury's application of the aggravator could only have been based on a finding of depravity, the dissenting justices concluded that "the instructions provided no help in guiding the jury to its decision" because the jury "received no guidance in determining whether the defendant's mind was materially 'depraved' beyond that of any first degree murderer, and was bestowed unconstitutionally unfettered and unguided discretion in applying this aspect of [the] aggravating circumstance." *Id.* at 83-84 (Reid, C.J. dissenting) (citing *Shell v. Mississippi*, 498 U.S. 1 (1990)). The majority responded to the "dissent['s] challenge[] [to] the validity in the present case of the aggravating circumstance" by setting forth evidence in support of the aggravator and holding that the jury was "fully and correctly instructed" on the aggravator in accord with *State v. Williams*, 690 S.W.2d 517, 529 (Tenn. 1985).[1]

---

[1] Approximately one year after the state supreme court upheld Cone's death sentence, the Tennessee Supreme Court decided *State v. Williams*, in which it construed "depravity of mind" in cases where there was no evidence of torture. 690 S.W.2d at 529-30. The construction was intended to comport with constitutional requirements by sufficiently narrowing the class of persons eligible for the death penalty as required by *Godfrey v. Georgia*, 446 U.S. 420 (1980).

*Harris* demonstrates that, in a death penalty case, the state supreme court's mandatory review of the sufficiency of the evidence to support the jury's finding of an aggravator necessarily includes an affirmative examination of whether the aggravator, either as instructed or as viewed by the reviewing court through a narrowing construction, sufficiently narrowed the class of persons eligible for the death penalty. As a result, there can be no doubt in this case that the state court reviewed the "heinous, atrocious, and cruel" aggravator on the merits and determined that it was not unconstitutionally vague.

Moreover, there is nothing in the record that would constitute a clear and express statement that the state court disposed of this issue on state procedural grounds, a prerequisite to the deference to state decisionmaking that our federal doctrine of procedural default aims to protect. Cone first presented his challenge to the constitutionality of the aggravator in paragraph 18 of his second amended post-conviction petition. In dismissing the ground, the trial court did not state that the claim had been waived, as the State asserts in its brief before this Court, but that "grounds 17, 18 [which included his challenge to the constitutionality of the aggravator], 19, 21, 22, 23, 34, 35, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, and 36 involve[] a potpourri of various errors by the court at the trial all of which grounds have been considered and denied in direct appeal or the First Post Conviction Petition." *Cone v. State*, No. P-06874, slip op. at 4 (Crim. Ct. Tenn., 13th Judicial Dist., Dec. 16, 1993). In affirming the trial court's ruling, the Tennessee Court of Appeals did not expressly address Cone's claim for relief based on the "heinous, atrocious, or cruel" aggravator, but agreed with the trial court that all of Cone's claims had been "previously determined or waived." This language, in light of the state supreme court's mandatory review on direct appeal, "gives a federal court good reason to question whether there is an adequate and independent state ground for the decision." *O'Guinn v. Dutton*, 88 F.3d 1409, 1423 (6th Cir. 1996) (Merritt, J., concurring).

To the extent that the decision of the state court of appeals can be read as an "unexplained ruling" due to its failure to specify that a procedural default has been expressly invoked to dispose of this particular claim, we must refer to the only reasoned state court judgment addressing the aggravator, which in Cone's case is the state supreme court's express consideration of the aggravator on direct appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("If an earlier opinion 'fairly appears[] to rest primarily on federal law,' . . . we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place"); *O'Guinn*, 88 F.3d at 1423. As explained above, we can presume that, in ruling that the evidence supported the jury's finding that the crimes were "especially heinous, atrocious or cruel," the state supreme court, as in *Harris*, fulfilled its statutory duty to test the constitutionality of the aggravator. Further, contrary to the State's assertion, no state court has clearly and expressly stated that its disposition on the issue was based on the independent and adequate state ground of waiver, as required by *Harris v. Reed*, 489 U.S. 255, 263 (1989), and *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

Our view is reinforced by *State v. West*, 19 S.W.3d 753 (Tenn. 2000), in which the constitutionality of an aggravator was raised. The state supreme court ruled that it had previously determined the constitutionality of the aggravator on direct appeal pursuant to its statutory mandate "to automatically consider whether the 'evidence supports the jury's finding of a statutory aggravating circumstance or statutory aggravating circumstances.'" *Id.* at 756. *West* demonstrates that the Tennessee Supreme Court understands its statutory obligation to review death sentences as carrying with it the affirmative responsibility to keep the application of the statutory aggravators within constitutional bounds. *See Godfrey v. Georgia*, 446 U.S. 420, 429 (1980) (noting the Georgia Supreme Court's previous exercise of its responsibility to keep the application of the "outrageously or

wantonly vile, horrible and inhuman" aggravator within constitutional bounds).

## II. Cause and Prejudice

Even if Cone had procedurally defaulted his objection to the "heinous, atrocious, and cruel" aggravator, this Court can still hear the claim if Cone can establish "cause and prejudice" for the default. *Coleman*, 501 U.S. at 750. Cone argues that his failure to raise the objection on direct appeal was due to the ineffectiveness of his counsel. Ineffective assistance of counsel, if established, can be sufficient to establish cause and therefore allow a federal court to reach the merits of a claim defaulted in a state court so long as the ineffectiveness rises to the level of a Sixth Amendment violation resulting in prejudice to the defendant. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

In this case, counsel was allegedly ineffective at two stages of the proceeding in failing to raise the constitutional objection to the instruction – at trial and on appeal. Before we can decide if Cone has established ineffective assistance of counsel as cause of the failure to object at trial and on appeal, we must first decide whether Cone has properly exhausted the ineffectiveness claim in the state courts. When a petitioner claims ineffective assistance of counsel as cause for a procedural default in state court of a substantive constitutional claim, the allegation of ineffectiveness is a separate claim which must itself be exhausted in state court according to the normal procedures. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Murray v. Carrier*, 477 U.S. 478, 489 (1986) ("[T]he exhaustion doctrine...generally requires that a claim of ineffective assistance of counsel be presented to state courts before it may be used to establish cause for a procedural default."). According to *Edwards*, the failure to exhaust the ineffectiveness claim will itself constitute a procedural default of the procedural default defense and, absent cause and prejudice, will prevent federal courts from hearing it. 529 U.S. at 452. A petitioner cannot easily

establish cause for the third default, because there is no constitutional right to counsel at post-conviction hearings, according to *Coleman*, and without such a right ineffective assistance of counsel cannot constitute cause for a procedural default. 501 U.S. at 752.

It is clear from the record that Cone did not waive his ineffective assistance of counsel claim. Cone raised a general claim of ineffective counsel in his first post-conviction petition. Although he did not claim specifically in that first petition that his counsel was ineffective because of the failure to object to the vague "heinous, atrocious, and cruel" aggravator, he added those grounds in his second post-conviction petition. Both the state trial court and the appellate court ruled that under Tennessee law, ineffective assistance of counsel is a "single ground for relief" that had been "previously determined" in the first post-conviction petition. J.A. at 2001. Therefore, even though Cone did not claim that his counsel was ineffective specifically because of the failure to object to the aggravator until his second post-conviction petition, he has not defaulted that claim because under Tennessee law it constitutes the same ground that the Tennessee courts had previously determined to be without merit.

Still, even though Cone has not procedurally defaulted his ineffective assistance of counsel claim, the message from *Edwards* is that in order to rely on the ineffectiveness claim as cause for his failure to raise the "heinous, atrocious, and cruel" aggravator, the issue must not only have been presented to, or at least determined by, the state courts, the restrictions on federal review from the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") must be satisfied as well. Specifically, §2254(d) prevents federal courts from granting habeas "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim" was either "contrary to" or an "unreasonable application of" clearly established federal law. 28 U.S.C. §2254(d) (2003); *Williams v. Taylor*, 529 U.S. 362,

402-13 (2000). Thus, we must determine whether the rejection of Cone's ineffective assistance of counsel claim by the Tennessee state courts in his post-conviction petitions was contrary to, or an unreasonable application of, clearly established federal law.

The starting point for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984). According to *Strickland*, in order to establish a claim for the ineffective assistance of counsel, a petitioner must be able to show both that his counsel was constitutionally deficient and that the deficiency prejudiced his defense. *Id.* at 687; *Wiggins v. Smith*, 123 S. Ct. 2527, 2535 (2003); *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Although the *Strickland* test is "highly deferential" to the judgment of defense counsel, 466 U.S. at 689, and the mere fact that counsel has failed to recognize or raise a particular claim does not always constitute cause for a procedural default, *Smith v. Murray*, 477 U.S. 527, 535 (1986); *Carrier*, 477 U.S. at 486-87, the Supreme Court has also made it clear that "the right to effective assistance of counsel . . . may in a particular case be violated by even an isolated error...if that error is sufficiently egregious and prejudicial." *Murray*, 477 U.S. at 535 (quoting *Carrier*, 477 U.S. at 496); *see also Edwards*, 529 U.S. at 451 ("Although we have not identified with precision what constitutes 'cause' to excuse a procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice.").

In this case, there can be no doubt that the defense counsel's error was "sufficiently egregious and prejudicial" to constitute cause for his procedural default. The defense counsel failed both at trial and on direct appeal to object to the "heinous, atrocious, and cruel" aggravator despite the then-recent Supreme Court decision in *Godfrey v. Georgia*, 446 U.S. 420 (1980), in which the Court held similar language to be unconstitutionally vague. Indeed, as the Court here points out, not only did the principle established in

*Godfrey* mean that the "heinous, atrocious, and cruel" aggravator was unconstitutional (as explained later in *Maynard v. Cartwright*, 486 U.S. 356 (1988)), to rule otherwise as the Tennessee Supreme Court did in its mandatory review was contrary to clearly established Supreme Court precedent even according to the high standards of AEDPA as interpreted in *Williams v. Taylor*. Cone's defense counsel missed, both at trial and on direct appeal, a claim of clearly established constitutional dimension, the preservation of which would result in having one of the aggravators on which Cone was sentenced to death thrown out. Failing to raise a winning defense is not a strategic decision, and incompetence is the only explanation for the failure to raise it. It appears that Cone's counsel was litigating a capital case while simply unaware of controlling Supreme Court precedent in death penalty cases. It is hard to imagine a better case for "ineffectiveness in failing properly to preserve [a] claim for review in state court." *Edwards*, 529 U.S. at 451.

This conclusion is further supported by the American Bar Association's Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases. As pointed out in *Strickland*, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." 466 U.S. at 688. American Bar Association standards are only "guides" and not "rules" for what constitutes ineffective assistance of counsel, *id.*, but in this case the guidelines speak clearly:

One of the most fundamental duties of an attorney defending a capital case at trial is the preservation of any and all conceivable errors for each stage of appellate and post-conviction review. Failure to preserve an issue may result in the client being executed even though reversible error occurred at trial. For this reason, trial counsel in a death penalty case must be especially aware not only of strategies for winning at trial, but also of the heightened need to fully preserve all potential issues for later review.

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 91-92 (rev. ed. 2003) (internal quotations omitted).[2] In this case, not only did Cone's counsel fail to preserve "any and all" errors, he failed to preserve a claim based on binding Supreme Court precedent that was a sure winner as a matter of federal law and that, given the role of the "heinous, atrocious, and cruel" aggravator in the jury's deliberation of the death sentence, may well have saved his client's life. There can be no doubt that this error was "sufficiently egregious and prejudicial" to constitute cause for the procedural default of that claim.

### III.  Contrary to Established Supreme Court Cases

Finally, I have no trouble finding that the denial of Cone's claim that his counsel was ineffective due to the failure to object to the "heinous, atrocious, and cruel" aggravator was not only wrong, but contrary to clearly established federal law as required by AEDPA and *Williams*. Although the error at issue here involves the failure to raise a claim rather than the failure to investigate at issue in *Strickland* and *Wiggins*, the differences do not mean that the Tennessee courts' rejections of his valid ineffectiveness claim are not contrary to the clearly established test from *Strickland*. As the Supreme Court explained in *Williams*, " [t]hat the *Strickland* test 'of necessity requires a case-by-case examination of the evidence' . . . obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established' by this Court." 529 U.S. at 391 (citation omitted). The *Strickland* test is well-established, and is itself based on a long

---

[2] Although the above quotation is a recent statement not published at the time of Cone's trial, I use it because it is an articulation of long-established "fundamental" duties of trial counsel. See *Hamblin v. Mitchell*, 354 F.3d 482, 487 (6th Cir. 2003) (applying 1989 ABA guidelines to counsel's 1982 representation on the grounds that "the standards merely represent a codification of longstanding, common-sense principles of representation understood by diligent, competent counsel in death penalty cases").

established right to effective counsel. *See id.* ("[I]t can hardly be said that recognizing the right to effective counsel breaks new ground or imposes a new obligation on the states." (internal quotations omitted)).

The *Strickland* test requires not only ineffectiveness of counsel, but also prejudice to the defendant as a result of that ineffectiveness. 466 U.S. at 687. For the purposes of this test, prejudice amounts to a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Demonstrating such a reasonable probability is not difficult here. As the Court explains in its harmless error analysis, *supra*, the prosecutor specifically emphasized the "heinous, atrocious, and cruel" aggravator during closing arguments and at the sentencing phase of the trial. Moreover, this is the second invalid aggravator found by the jury. Thus, there is at the very least a reasonable probability that had Cone's counsel preserved the objection to this "heinous, atrocious, and cruel" aggravator, his sentence ultimately may well have been different.

### IV.  The Merits

As is now typical in death penalty cases, we have spent more time discussing the maze of "door closing" devices such as procedural default than the merits. In this case, the merits are relatively easy to decide.

The Court concludes that applying the "heinous, atrocious, and cruel" aggravator to Cone's case was not only wrong but contrary to clearly established federal law as required by AEDPA and *Williams* because similar language was ruled unconstitutional in *Godfrey*. The Court cites *Maynard* for support of this proposition, which specifically held that an identical Oklahoma "heinous, atrocious, and cruel" aggravator was unconstitutional. Although *Maynard* was not decided until 1988 – after the Tennessee Supreme Court upheld Cone's conviction – because the Court in *Maynard*

said that it was only applying the clear principle of *Godfrey* and not establishing new law, this Court today cites it for the proposition that Tennessee's upholding the "heinous, atrocious, and cruel" aggravator was contrary to clearly established federal law.

I agree with the Court despite the state counsel's objection to reliance on a later case to determine what law had been then clearly established. I would only add that the Supreme Court recently did precisely the same thing in *Wiggins v. Smith*, 123 S. Ct. 2527, 2535-36 (2003), despite an identical objection by the dissenting justices in that case. *Id.* at 2546-47. In that case, the Court applied the rule of *Strickland v. Washington*, which was decided before Wiggins' state court ruling, but also cited *Williams v. Taylor*, which was decided *after* Wiggins' state court decision. *Id.* Since the Court in *Williams* had "made no new law in resolving Williams' ineffectiveness claim," *id.* at 2535, the *Wiggins* Court was free to cite *Williams* in determining whether or not the state court ruling against Wiggins was contrary to clearly established federal law, even though *Williams* was decided *after* the state court ruled against Wiggins. Similarly, as the Supreme Court later said when discussing non-retroactivity, "[i]n applying *Godfrey* to the language before us in *Maynard*, we did not "break[] new ground." *Stringer v. Black*, 503 U.S. 222, 228-29 (1992) (quoting *Butler v. McKellar*, 494 U.S. 407, 412 (1990)). Therefore, *Wiggins* reinforces our reliance on *Maynard*'s application of *Godfrey* when determining what was "clearly established federal law" at the time of Cone's state court decision even though *Maynard* was not yet decided. In *Houston v. Dutton*, 50 F.3d 381 (6th Cir. 1995), our Court did the same thing in invalidating the same Tennessee instruction. We cited *Richmond v. Lewis*, 506 U.S. 40, 46 (1992), a case decided after Houston's last state court decision, to find the same "heinous, atrocious, or cruel" aggravator unconstitutional because *Richmond* simply applied the principle enunciated in *Godfrey* and *Maynard*.

For these reasons, as well as those articulated by the Court, I agree with the Court's ruling.

## DISSENT

ALAN E. NORRIS, Circuit Judge, dissenting. As my concurrence in this court's initial panel decision makes clear, *Cone v. Bell*, 243 F.3d 961 (6th Cir. 2001), I harbor grave reservations about the appropriateness of the death penalty in this case. However, our analysis was soundly rejected by the Supreme Court. *Bell v. Cone*, 535 U.S. 685 (2002). On remand, the majority concludes that the writ should issue on a ground not reached in our prior opinion. While I am reluctant to part company with my colleagues in this case, I feel obliged to do so because the majority's construction of Tennessee law with respect to "implicit review" as it applies to waiver lacks any clear support from the Tennessee courts. I therefore respectfully dissent.

To its credit, the majority candidly acknowledges the tenuousness of its position with respect to whether petitioner has procedurally defaulted his Eighth Amendment claim. For lack of more compelling authority, the majority hitches its wagon to *State v. West*, 19 S.W.3d 753 (Tenn. 2000), a case that it concedes contains a "seeming contradiction" because it holds that defendant's vagueness claim was both "previously determined" and "waived." Maj. Op. at 11 (citing *West*, 19 S.W.3d at 756). However, *West* primarily focuses upon waiver: "[W]hen West failed to raise the [vagueness] issue on direct appeal, he effectively blocked any consideration of this issue by this Court on post-conviction review." *West*, 19 S.W.3d at 756.

In *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998), an opinion in which I also concurred, we reviewed a district court reading of Tennessee Code Ann. § 39-2-205 (1982) for "the notion that, in capital cases, the state supreme court has to review significant errors, whether or not they were raised by the defendant." *Id.* at 336. *Coe* rejected this reading as "too

broad, as it would eliminate the entire doctrine of procedural bar in Tennessee capital cases." *Id.* As the majority points out, virtually every other circuit that has reviewed analogous state-law provisions has expressed similar concerns. Majority Op. at 7-8 (citing cases). Aware of the potential sweep of its conclusion, the majority seeks to reign it in by drawing the following distinction:

> [T]he implicit review doctrine, as we apply it today in this case, does not foreclose the possibility that other death penalty defendants may procedurally default on other constitutional issues not raised on direct appeal. The language of Tennessee's mandatory review statute provides a basis to distinguish between vagueness challenges and other constitutional claims, since it requires the Tennessee Supreme Court to look specifically for sentences "imposed in any arbitrary fashion."

Maj. Op. at 13. Given that the scope of procedural default is a matter of state law, I would be much more comfortable if the majority had cited a single Tennessee opinion that explicitly draws this distinction. Frankly, I do not find it in *West*, and the majority concedes that "[t]he conceptual leap from [reviewing] claims explicitly raised on direct appeal, although not properly preserved, to claims not raised at all is significant and, without *West*, there would be no Tennessee authority for attempting it." Maj. op. at 12. Given the inherent contradictions in *West*, it is a leap that I am unwilling to make without further guidance from the courts of Tennessee.

For the foregoing reasons, I respectfully dissent.